## Dickerson v. Dickersons Overseas Company, Appellant.

Argued November 26, 1951. Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

*Rodney T. Bonsall,* with him *John B. Hannum, 3rd* and *Evans, Bayard & Frick,* for appellants.

*Morris Wolf,* with him *Lewis M. Stevens, Louis J. Goffman, Stradley, Ronon, Stevens & Young,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE BELL, January 7, 1952:

Plaintiff brought an action in assumpsit against defendant, Dickersons Overseas Company, a Pennsylvania corporation, *and six individual defendants,* individually and as partners, trading as The Dickerson Company and as Dickersons Overseas Company, to recover $2,709.43 due him as wages for services rendered in April, May and June, 1950.

This suit was brought on an employment agreement made January 24, 1949, *between the defendant corporation, Dickersons Overseas Company, and plaintiff,* by the terms of which plaintiff was employed for five years and was to be paid quarterly as wages a sum equal to two per cent of the gross sales of the corporation, and of any other enterprises under its control. The six individuals as individuals and partners were joined as co-defendants because they expressly assumed this contract. Plaintiff attached to his complaint a statement of wages or commissions due him which was prepared by defendants and which showed the gross

sales for the period April to June, 1950, and the wages equal to two per cent thereof.

Defendants admitted all of the material allegations of plaintiff's complaint, including the fact that he earned the exact amount which he claimed as wages.

Defendants, however, filed a counter-claim and new matter alleging a set-off in the sum of $220,000. arising out of alleged false and fraudulent representations by plaintiff *which induced* Henshaw and Klauder, *two of the defendants,* to enter into a written contract dated *January 17,* 1949, which will be hereinafter more fully discussed. This written contract of *January 17,* 1949 for the sale of stock of two corporations and of certain specified assets of plaintiff contained a provision that the purchasers agreed to employ the plaintiff under an employment contract, such as was later (January *24th)* entered into between plaintiff and the corporation known as Dickersons Overseas Company and assumed by these defendants. The court sustained plaintiff's preliminary objections and entered judgment on the pleadings in favor of plaintiff and against defendants for $2,709.43, with interest from July 30, 1950.

The facts are very involved but may be summarized as follows: The written agreement of *January 17,* 1949 was lengthy and detailed. It was made by and between *plaintiff individually* and trading as The Dickerson Company, and for himself individually *and as agent for eight named shareholders* of *The Dickerson Company of Pennsylvania* and of the Dickersons Overseas Company, *parties of the first part,* and *Henshaw and Klauder,* two of the defendants, *parties of the second part.* After settlement was completed in accordance with the terms of this written agreement, the shares of stock of the Pennsylvania corporation known as Dickersons Overseas Company were actually transferred to a limited partnership known as The

Dickerson Company, and composed of defendants Henshaw, Klauder and McCarthy, as general partners, and defendants Mitchell, Duffell and Haggerty as limited partners. Thereafter the corporation known as the Dickersons Overseas Company was liquidated and all of its assets were transferred to, and its liabilities assumed by the above-mentioned limited partnership which was formed under the Uniform Limited Partnership Act of Pennsylvania, approved April 12, 1917, P.L. 55. The limited partnership then caused its general partners to register under the Fictitious Names Act under the name of Dickersons Overseas Company.

This written agreement of January 17th provided for the sale of all the stock of the two named corporations at its *"book net worth"* as of December 31, 1948 *"including $60,000 for good will"*; it provided that named certified public accountants should examine the books and records of defendant corporation known as Dickersons Overseas Company and of The Dickerson Company of Pennsylvania and of The Dickerson Company; it contained many detailed provisions with respect to assets and liabilities and how they should be valued; it required plaintiff to give the purchasers assurances covering many matters, including all contracts, leases and other agreements; and the subject matter of disputes and their solution was likewise covered in the agreement. The agreement then concluded with Paragraph 11: "This agreement embodies the whole agreement between the parties, superseding all previous agreements, if any, and may not be varied except by written instrument signed by the parties hereto. The commitments and undertakings of this agreement shall be binding upon the executors, administrators, successors and assigns of the parties hereto." The price paid for the shares of stock and other assets of plaintiff and of the named individuals whom he

represented exceeded a quarter of a million dollars.

Defendants alleged that plaintiff, in order to induce the purchase of the aforesaid stock and assets, falsely and fraudulently represented, inter alia, (a) that the defendant corporation had a good will of $60,000. (as alleged in the written agreement of January 17, 1949), whereas it had no good will; (b) that the gross monthly sales of the Dickersons Overseas Company and of The Dickerson Company had averaged $40,000. a month in 1948; (c) that the decline in sales for the month of November, 1948 was due to a New York dock strike [there was such a strike]; (d) that a similar decline in sales for December, 1948, was due to exchange conditions in The Netherlands which was only temporary [there was difficulty concerning exchange conditions in The Netherlands]; (e) that plaintiff had deliberately concealed, with intent to cheat and defraud defendants, the knowledge that two very important contracts would shortly thereafter be terminated and not renewed; (f) that a substantial part of the business involved valuable overseas contracts including contracts in the Philippine Islands, whereas there had been no contracts in the Philippine Islands since 1945; (g) and that plaintiff knew that gross monthly sales could not be maintained at a $40,000. average upon the return of good general business conditions and that said business would only average ten to twelve thousand dollars. Incidentally, the statements of gross sales prepared by defendants for April, May and June, 1950, showed average monthly earnings of over $53,000., and the average monthly earnings over the seventeen months of this contract exceeded $40,000. The defendants further alleged that they discovered plaintiff's false and fraudulent representations *immediately* after the execution of the contract of *January 17*, 1949, and immediately offered to return the stock and other assets

to the plaintiff and demanded of him that he return to them the money paid him for the purchase thereof. Notwithstanding the discovery by defendants of the alleged false and fraudulent representations by plaintiff, these defendants continued to employ plaintiff and *paid him for fifteen months* two per cent of the gross sales *as required by his employment contract of January 24,* 1949. One cannot help wondering how they justify such payments with their present allegations.

The legal questions involved are many, but it will be necessary to discuss only two of them: (1) Was the set-off claimed by defendants properly allowable in this case; and (2) is this suit barred by lis pendens?

*The parties* to the written contract of *January 24th,* on which the plaintiff is suing for wages, *are not the same as the parties* to the written contract of *January 17th* for the sale of stocks and assets for the violation of which defendants claim a set-off; and consequently defendants cannot avail themselves in this suit of their claim for set-off: *Porter v. Levering,* 330 Pa. 392, 199 A. 482; *Hunter v. Henning,* 259 Pa. 347, 103 A. 61; 47 Am. Jur., Setoff and Counterclaims, §48.

"Set-offs and counterclaims are procedurally available only when there are mutual demands": *Porter v. Levering,* 330 Pa. 392, 396, supra.

In *Hunter v. Henning,* 259 Pa., supra, the Court said (page 350): " 'The foundation of set-off,' says MITCHELL, J., in Hibert v. Lang, 165 Pa. 439, 'is the prevention of circuity of action. It is therefore the general rule that *cross-demands must be held in the same persons and in the same rights* * so that actions may be maintained thereon each against the other.' "

In 47 Am. Jur., Setoff and Counterclaim, §48 the law is thus stated: *"The terms 'setoff' and 'counter-*

---

* Italics throughout, ours.

*claim' imply reciprocal demands existing between the same persons* at the same time, and it is a well-settled general rule that if a demand or claim is to be set off or counterclaimed in an action, *the setoff or counterclaim and the action must be between the same parties, and between them in the same capacity.* The setoff or counterclaim must be such a. demand that the defendant, in his own name, or in the names of defendants sued, without bringing in the name of a stranger to the suit, may maintain an action of debt or indebitatus assumpsit on it, against the party, or all the parties suing, as the case may be. . . . The general rule is based on the well-known principle that a cause of action pleaded as on a right in favor of two or more persons jointly is not sustained by proof of a right in one of them."

Pa. R.C.P., §1031 provides as follows: "Rule 1031. Counterclaim. (a) The defendant may set forth in the answer under the heading 'Counterclaim' any cause of action or setoff which he has against the plaintiff at the time of filing the answer (1) which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose or (2) which arises from contract or is quasi-contractual."

Rule 1031 does not abrogate one of the essential requisites for set-off, namely, that the set-off or counterclaim and the action must be against and between the same parties and between them in the same capacity; and here they are not.

It is not necessary to decide whether the claim and counter-claim arose out of the same transaction or series of transactions or whether this counter-claim arises from contract or is quasi-contractual or is a claim resting in tort for fraud and deceit—in which event it. "cannot be made the basis of a counterclaim in an action

of assumpsit": *O'Brien v. O'Brien,* 362 Pa. 66, 72, 66 A. 2d 309.

That brings us to the second question. On May 13, 1949 plaintiff filed a complaint in the United States District Court against Dickerson Overseas Company, a Pennsylvania corporation, and Henshaw and Klauder, individually and co-partners trading as Dickersons Overseas Company, *asking for a declaratory judgment on the question whether the defendants had been guilty of a material breach of the written contract of January 24, 1949,* and whether such breach had the effect of nullifying and terminating the various obligations of the plaintiff thereunder, and also claiming damages for breach. Defendants filed a counterclaim thereto. That case is still pending. The defendants contend that since that suit is still pending, lis pendens bars the present suit.

" 'A plea of former suit pending must allege that the case is the same, *the parties the same,* and *the rights asserted and the relief prayed for the same;* and where the truth of the plea can be ascertained by an inspection of the record, the court will determine the question without a reference' ": *Hessenbruch v. Markle,* 194 Pa. 581, 593, 45 A. 669; *Masters' Estate,* 85 Pa. Superior Ct. 292.

Defendants' contention is without merit for the cases are not the same, the parties are not the same, and the rights asserted and the relief prayed for are not the same.

It is unnecessary to discuss or decide the many interesting legal questions raised by appellee as further defenses to this counterclaim or set-off.

Judgment affirmed.