487 A.2d 385

**UNITED NATIONAL INSURANCE CO. and Amherst Insurance Company and Northeastern Fire Insurance Co.**

v.

**M. LONDON, INC., Lewis Feldman and Jennie Feldman, His Wife and Paul London, Executor of the Estate of Louis London and Celia London**

v.

**Fred LOWENSCHUSS and Fred Lowenschuss Associates, Appellants**

v.

**COZEN, BEGIER & O'CONNOR.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1984.

Filed Jan. 9, 1985.

528

William D. Parry, Philadelphia, for appellants.

Ronald B. Hamilton, Philadelphia, for United Nat., appellees.

Gary A. Rochestie, Philadelphia, for London, appellees.

Before McEWEN, DEL SOLE and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the orders of the Court of Common Pleas of Philadelphia County granting the preliminary objections of the plaintiffs (United National Insurance Co., Amherst Insurance Co. and Northeastern Fire Insurance Co.), the defendants (M. London, Inc., Lewis Feldman and Jennie Feldman, his wife, and Paul London, Executor of the Estate of Louis London and Celia London) and the defendant on the counterclaim (Cozen, Begier & O'Connor) and dismissing with prejudice the counterclaim of the additional defendant (Fred Lowenschuss) and Fred Lowenschuss Associates. We affirm and modify.

The facts, which are not without their legal and procedural complexities, are that the defendants' business was damaged by fire and the plaintiffs paid for ⅓ of the cost of the damage incurred. Consequently, the defendants retained additional defendant as counsel to sue the manufacturer of the appliance which allegedly caused the fire. The action proceeded to trial and a jury returned a verdict in favor of the manufacturer. Following this, the plaintiffs, represented by the defendant on the counterclaim, filed a complaint averring that the defendants' institution of a lawsuit, without the plaintiffs' knowledge or consent, against the manufacturer constituted a breach of the insurance contracts which worked an irrevocable prejudice to the rights and interests of the plaintiffs pursuant to their subrogation

entitlement. (Paragraphs 19, 22 & 23) Thus, the plaintiffs sought to recoup the amount of insurance paid (plus interest) to the defendants under the policies.

Thereafter, the court extended, pursuant to a stipulation between counsel for the plaintiffs and defendants, the time within which the defendants could join Fred Lowenschuss as an additional defendant. What followed was the filing of a complaint accusing the additional defendant of being incompetent, grossly negligent and acting in total disregard of the defendants' instructions in not advising them of and contesting the plaintiffs' petition to intervene at trial. They sought in excess of $10,000 in damages and averred that the additional defendant was solely liable to the plaintiffs, jointly liable with or liable over to the defendants.

In February or March of 1980, the additional defendant filed preliminary objections to the defendants' complaint, which were sustained by the court by order dated February 5, 1982. Additionally, in the same order, defendants were granted leave again to join Fred Lowenschuss as an additional defendant, with the further requirement that they allege with particularity their contract with the additional defendant and his negligent conduct in connection therewith.

It warrants mentioning that in the 2-year span between the filing of the additional defendant's preliminary objections and the issuance of an order thereon, numerous documents appear of record which reveal a continuing dialogue solely among the plaintiffs, defendants and additional defendant, Fred Lowenschuss.

In compliance with the court's February 5, 1982 order, the defendants filed an amended complaint joining additional defendant. It stated, in pertinent part, that the attorney-client relationship was the product of a contingent fee agreement which provided that:

b) [Fred] Lowenschuss would be responsible for all costs involved in instituting, maintaining, trying and, if necessary, appealing the Fedders [A]ction[—the manufacturer against whom suit had been filed for the damages in-

curred at the defendants' business], including but not limited to filing costs, costs of depositions, costs of lay and expert witnesses, and costs of reproducing the record on appeal.

c) in the event there was a recovery in the Fedders Action, Lowenschuss would be reimbursed for all sums expended by him for costs out of proceeds recovered, with the balance of the recovery being divided between Lowenschuss and London [-defendants] as set forth in the Contingent Fee Agreement; and

d) in the event that there was not a recovery in the Fedders Action, Lowenschuss would not be reimbursed for the costs expended by him or the services rendered by him pertaining to the Fedders Action.

In the remaining portion of the amended complaint, the defendants recited those factors which it believed pointed to the additional defendant's reckless and negligent handling of their lawsuit, and their entitlement to both judgment (in excess of $20,000) and indemnification from suit by the plaintiffs.

However, prior to the presentment of the aforementioned complaint, the additional defendant filed the "Counterclaim of Fred Lowenschuss and Fred Lowenschuss Associates Against Plaintiffs and Defendants". Therein it was alleged that the law firm of Fred Lowenschuss Associates, which employed the additional defendant and other attorneys and law clerks, "performed legal services on behalf of the plaintiffs and defendants ... at various times" with regard to the handling of the Fedders Action. (Paragraph 2)

In particular, it was alleged that the plaintiffs agreed in writing to pursue "no longer ... their attempt to intervene in the lawsuit, and that all out-of-pocket expenses and costs of said suit would be shared equally between the plaintiffs and defendants ...." (Paragraph 5) Further, the additional defendant itemized the cost incurred by both he and his law firm in prosecuting the Fedders Action and the appeal therefrom, as well as the legal fees generated by having to defend against the plaintiffs attempt to intervene. Conduct

which, the additional defendant argued, violated the plaintiffs' agreement not to do so. (Paragraph 6)

Moreover, recovery by the additional defendant and Fred Lowenschuss Associates in the assumpsit counts (I, II & III) of the counterclaim was premised upon theories of implied contract, express contract and quantum merit. In the trespass count (IV), however, it was only the additional defendant who alleged injury by the plaintiffs and defendants for malicious use of process in instituting suit in bad faith and for purposes of harassment, seeking in excess of $20,000 as compensatory damages and an equal sum as punitive or exemplary damages for the time expended by he and his law firm in defending against the suit.

Shortly thereafter, the plaintiffs and defendants each filed preliminary objections similar in form and content, i.e., 1) in the nature of a motion to strike off pleading because of lack of conformity to law or rule of court; 2) raising the defense of lack of capacity to sue; 3) in the nature of a more specific pleading; 4) in the nature of a demurrer; and 5) attacking the form of service. The singular most relevant statement made in each document related to the claim that Pa.R.Civ.P. 1031 only permitted the filing of a counterclaim by a party of record. Since Fred Lowenschuss Associates was brought into the suit by the additional defendant by way of the counterclaim, it was a non-party to the litigation and, therefore, lacked the capacity to sue the plaintiffs or the defendants. (Paragraphs 16 & 18, respectively)

What followed was the filing of the additional defendant's preliminary objections to the defendants' amended complaint and the counterclaimants' (additional defendant's and Fred Lowenschuss Associates') answer to each of the preliminary objections submitted by the plaintiffs and defendants to the counterclaim, wherein it was denied that Fred Lowenschuss Associates lacked the capacity to sue and that joinder was "proper in order to bring all proper parties before the Court and to avoid a multiplicity of suits."

Thereafter, because no answer had ever been filed to the defendants' amended complaint, the court granted the plaintiffs' preliminary objections bringing this to the court's attention, and, as a consequence, the additional defendant's and Fred Lowenschuss Associates' counterclaim was "dismissed without prejudice to their right to assert the counterclaim upon filing a timely answer to the defendants' amended complaint." *See* Pa.R.Civ.P. 1031(a) ("The defendant may set forth in the answer under the heading "Counterclaim" any cause of action ... against the plaintiff at the time of filing the answer."); *see also* Pa.R.Civ.P. 1017(a). On the same date, the court entered a second order denying the additional defendant's preliminary objections to the defendants' amended complaint and granted the defendants' preliminary objections in the nature of a demurrer to the additional defendant's preliminary objections. Also, the court granted the additional defendant 20 days within which "to file an answer to the [defendants'] amended complaint or otherwise plead."

In compliance with the aforesaid, the additional defendant filed an answer denying, *inter alia,* that the contingent fee agreement "provided that Lowenschuss would be responsible for all costs involved in instituting, maintaining, trying and, if necessary, appealing the Fedders [A]ction, including but not limited to filing costs, costs of depositions, costs of lay and expert witnesses, and costs of reproducing the record on appeal. On the contrary, it [was] averred that, although Attorney Lowenschuss might advance or guarantee such costs and expenses, London [defendants] at all times remained ultimately liable for such expenses...." (Paragraph 9) Further, "[i]t [was] admitted that Lowenschuss ha[d] demanded and [was] still demanding that London reimburse him for the costs expended by him in connection with the Fedders Action." (Paragraph 41) It was additional defendant's position that the defendants were legally responsible for the costs and expenses of the litigation, notwithstanding that there was no recovery by the defendants in the Fedders Action.

Under new matter, the additional defendant merely parroted the allegations initially set forth in his preliminary objections to the defendants' amended complaint (at Paragraphs 17–24) regarding the plaintiffs' intervention action and the propriety of contesting same. Also, the additional defendant and Fred Lowenschuss Associates included in the answer a counterclaim against the plaintiffs, the defendants and, for the first time, the law firm of Cozen, Begier and O'Connor, counsel for the plaintiffs.

As in the original counterclaim, mention was made of the defendants retaining the additional defendant and Fred Lowenschuss Associates to represent them in the Fedders Action, the execution of a contingent fee arrangement with both and the additional defendant's agreement to protect the plaintiffs' subrogation interests in the matter. In a similar vein, the counterclaimants alleged that the law firm representing the plaintiffs agreed to discontinue their attempts to intervene in the Fedders Action, and that all costs of said suit would be borne equally by the plaintiffs and defendants. These agreements were not honored, according to the counterclaimants, and instances were cited to substantiate the alleged breaches. Likewise, the costs incurred as a result of the Fedders Action were being sought under 3 assumpsit counts based upon implied and express contracts and the equitable principle of quantum merit, with the trespass portion of the counterclaim reserved by the additional defendant for his malicious use of process charge against the plaintiffs, defendants and defendant on the counterclaim.

Each of the movants and the defendant on the counterclaim filed preliminary objections (5 counts) questioning, in essence, the capacity of Fred Lowenschuss Associates to sue, having never been made a party to the original action or joined by the defendants as an additional defendant, nor was there any evidence that it attempted to intervene in the litigation. See Pa.R.Civ.P. 2328; 8 Goodrich-Amram 2d, §§ 2328–2330. Also, the joinder of Cozen, Begier and O'Connor was assailed as violative of Pa.R.Civ.P. 1031.

Following the filing of answers by the counterclaimants, the court, by orders dated June 2, 1983, upheld the preliminary objections and, consequently, "dismissed with prejudice" the counterclaim.[1] This appeal ensued and is properly before us for review. *Broido v. Kinneman,* 375 Pa. 568, 101 A.2d 647 (1954); 2 Goodrich-Amram 2d, § 1031(a):4 at 321 ("An order sustaining preliminary objections to a counterclaim is appealable. It puts the defendant out of court as far as the counterclaim is concerned, even though the validity of the plaintiff's claim is still undetermined.").

We find, after sifting through the voluminous record, the central issue to be one of whether the efforts of the additional defendant in joining various parties to the lawsuit proved to be consonant with the Pennsylvania Rules of Civil Procedure. If not, the court's orders granting the preliminary objections of the respective parties attacking the joinder were proper.

On this point, the court below took the position, in its opinion filed with us, that:

Although additional defendant and Fred Lowenschuss Associates argue that Fred Lowenschuss Associates and Cozer, [sic] Begier and O'Connor were properly a party to this action, after sedulous research, this Court has been unable to locate any legal basis for such a conclusion. Pa.Rules of Civil Procedure 1031, 2255 and 2256 deal with the procedure for an additional defendant to file a counterclaim. Pa.Rules [sic] of Civil Procedure 2328 deals with the method by which a party may intervene. However, there is no authority in statute or law for an additional defendant to join a non-party (Cozer, [sic] Begier and O'Connor) to an action by filing a counterclaim. Furthermore, there is no basis by which a non-party (Fred Lowenschuss Associates) may file a counterclaim.

By filing a counterclaim on behalf of Fred Lowenschuss Associates and against Cozer, [sic] Begier and

---

1. To the extent that any additional pleadings were filed, we find it unnecessary to recount their content for a proper disposition of the case.

O'Connor the additional defendant has not evidenced any intention of complying with this Court's Order, rather, they seem intent on pursuing the claim as originally filed. Therefore, this Court granted plaintiff[s'], defendant[s'] and Cozer [sic], Begier and O'Connor's preliminary objections.

■ Our review of the law is supportive of that portion of the court's ruling dismissing the additional defendant's joinder efforts and the succeeding Pennsylvania Rules of Civil Procedure are applicable to the determination made; e.g., Rules 2252 and 2253, which read:

**Rule 2252.  Right to Join Additional Defendants**

(a) In any action the defendant or any additional defendant may, as the joining party, join as an additional defendant any person whether or not a party to the action who may be alone liable or liable over to him on the cause of action declared upon by the plaintiff or jointly or severally liable thereon with him, or who may be liable to the joining party on any cause of action which he may have against the joined party arising out of the transaction or occurrence or series of transactions or occurrences upon which the plaintiff's cause of action is based.

(b) If the person sought to be joined is not a party to the action the joining party may file as of course a praecipe for a writ or a complaint.  If the joinder is by writ the joining party shall file his complaint within twenty (20) days from the filing of the praecipe for the writ.  The complaint, in the manner and form required of the initial pleading of the plaintiff in the action, shall set forth the facts relied upon to establish the liability of the joined party and the relief demanded.

\*      \*      \*      \*      \*      \*

(d) If the person sought to be joined is a party, the joining party shall, without moving for severance or the filing of a praecipe for a writ or a complaint, assert in his answer as new matter that such party is alone liable to the plaintiff or liable over to the joining party or jointly or severally liable to the plaintiff or liable to the joining

party directly setting forth the ground therefor. The case shall proceed thereafter as if such party had been joined by a writ or a complaint.

**Rule 2253.   Time for Filing Praecipe or Complaint**

Neither praecipe for a writ to join an additional defendant nor a complaint if the joinder is commenced by a complaint, shall be filed by the original defendant or an additional defendant later than sixty (60) days after the service upon the original defendant of the initial pleading of the plaintiff or any amendment thereof unless such filing is allowed by the court upon cause shown.

It is fairly deducible from the language of the rules just cited that, albeit Rule 2252 condones the "joining of any party" provided certain criteria are met, Rule 2253 specifically regulates the time-frame within which joinder must take place. Instantly, this translates into a finding that Fred Lowenschuss' annexing of Cozen, Begier and O'Connor to the suit must fail, since the law firm representing the plaintiffs, not being an original party to the action, could only have been joined via a writ or complaint within 60 days of the service of plaintiffs' complaint on the original defendants or any amendment thereof, or with the approval of the court "upon cause shown."

In the case at bar, the plaintiffs' complaint was filed on August 10, 1979. Although the court granted a stipulation between counsel for the plaintiffs and defendants to join Fred Lowenschuss as an additional defendant pursuant to Rule 2253, no similar action was implemented by Fred Lowenschuss on his own behalf, nor did he seek joinder of Cozen, Begier and O'Connor within 60 days of the defendants' amended complaint by writ or complaint.

It is true that on February 22, 1983, the court dismissed without prejudice the additional defendant's and Fred Lowenschuss Associates' counterclaim to afford them the opportunity to file *an answer* to defendants' amended complaint, but, even if we were to concede for the sake of argument this point in time as appropriate for a joinder petition, there are no pleadings of record (either in the nature of a writ or

complaint) reflecting adherence to the requirements of Rule 2253 by the additional defendant.

Thus, because the procedures called for by the rules were not followed by the additional defendant, and, particularly, since no request was made to the court below for an extension to join Cozen, Begier and O'Connor as an additional defendant, we have no reluctance in holding that the joinder of this party was procedurally defective and cannot stand. *See Snyder v. Leinhardt,* 54 Pa.D. & C.2d 137 (1971). We see no reason to hold otherwise as to the additional defendant's joinder of Fred Lowenschuss Associates, for, as in the previous instance, there was no compliance with Rule 2253.

Further, and more importantly, the right of joinder is not without limit. For example, joinder is not proper where the sole or joint liability averred is divorced from the liability alleged in the plaintiff's complaint. *See Harker v. Farmers Trust Co.,* 248 Pa.Super. 427, 375 A.2d 171 (1977); *American Metal Fabricators Co. v. Goldman,* 227 Pa.Super. 284, 323 A.2d 891 (1974). In the case sub judice, not only is this concept lacking, but the additional defendant joined a party (Fred Lowenschuss Associates) against whom he has no cause of action, which is totally foreign to the principles underlying the right of joinder, i.e., to insulate the joining party from, or minimizing his exposure to, liability, or the seeking of recoupment from the added party by the joining party for injuries sustained. *See* Pa.R.Civ.P. 2252.

Additional defendant's protestation that his sole shareholder status in the corporate law firm of Fred Lowenschuss Associates should dispense with the procedural deviation is left wanting. "A corporation is a distinct and separate entity, irrespective of the ownership of the stock, and the fact that one person owns all its stock does not make him and the corporation one and the same." *Glazer v. Cambridge Industries, Inc.,* 281 Pa.Super. 621, 625, 422 A.2d 642, 644 (1980), citing *Barium Steel Corp. v. Wiley,*

379 Pa. 38, 108 A.2d 336 (1954); *see also McConnell & Breiden v. Lee Templeton Motors,* 68 Montg.Co.L.R. 215 (1952). Thus, dispensation of Rule 2253 is not called for here, which, in turn, renders the additional defendant's position untenable and the actions of the court below proper. Fred Lowenschuss Associates had the opportunity to intervene below, *see* Pa.R.Civ.P. 2327; *Professional Office Buildings, Inc. v. Cott,* 105 Montg.Co.L.R. 84 (1978), and failed to do so. Accordingly, it will not now be heard to complain when its own inaction impeded the course it should have pursued.

■ However, when it dismissed the counterclaim "with prejudice", the court below implied a final determination of the additional defendant's cause of action against the plaintiffs and defendants. This was not warranted by the pleadings. *See generally Township of Upper Makefield v. Benjamin Franklin Federal Savings & Loan Association,* 271 Pa.Super. 399, 413 A.2d 726 (1979). In support of this conclusion, we look, as before, to the applicable Rules of Civil Procedure; in particular, Rules 2255, 2256 and 1031. Each provides as follows:

**Rule 2255. Procedure**

(a) The procedure, including pleadings, between the party joining an additional defendant and the additional defendant shall be the same as though the party joining the additional defendant were a plaintiff and the additional defendant were a defendant.

(b) No pleadings shall be filed between the additional defendant and any party other than the one joining him except that the additional defendant may file a counterclaim against the plaintiff.

**Rule 2256. Counterclaims**

(a) . . .

(b) An additional defendant may not assert a counterclaim which is not founded upon the transaction, occurrence or series of transactions or occurrences out of which the original cause of action arose.

**Rule 1031. Counterclaim**

(a) The defendant may set forth in the answer under the heading "Counterclaim" any cause of action or setoff which he has against the plaintiff at the time of filing the answer (1) which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose, or (2) which arises from contract or is quasi-contractual.

(b) A counterclaim need not diminish or defeat the relief demanded by the plaintiff. It may demand relief exceeding in amount or different in kind from that demanded by the plaintiff.

As a general canon of interpretation, the Rules of Civil Procedure are to "be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." Pa.R.Civ.P. 126. This practice is just as relevant to rules governing counterclaims, especially where the primary intent is to avoid "circuity of action", *see Dickerson v. Dickersons Overseas Co.*, 369 Pa. 244, 85 A.2d 102 (1952), and prompt disposition of all rights and liabilities of those present and concerned in a single suit. *See Eckrich v. DiNardo*, 283 Pa.Super. 84, 92, 423 A.2d 727, 731 (1980) (dealing with Pa.R.Civ.P. 2252).

To date, the courts have interpreted a counterclaim as "the generic term including all claims and all forms of relief which can be asserted or demanded by defendant [or additional defendant,]" *Fischer v. Solomon*, 78 Pa.D. & C. 562, 566 (1951), "limited only by the qualification that it ar[i]se from the same factual background as that from which plaintiff's cause of action arose." *Lenker v. Boyer*, 85 Pa.D. & C. 531, 534 (1952). In other words,

The ... counterclaim must be such a demand that the defendant [or the additional defendant], in his own name, or in the names of the defendants [or the additional defendants] sued, without bringing in the name of a stranger to the suit, may maintain an action of debt or indebitatus assumpsit on it, against the party, or all the parties suing, as the case may be. * * * The general rule is based on the well-known principle that a cause of action

pleaded as on a right in favor of two or more persons jointly is not sustained by proof of a right in one of them. *Dickerson v. Dickersons Overseas Co., supra,* 369 Pa. at 250, 85 A.2d at 105. From this definition of "counterclaim" an additional defendant may set forth any number of counterclaims which he has against either the original defendant or the plaintiff, *see* Pa.R.Civ.P. 2255(a) & (b), provided the requirements of subdivision (b) of Pa.R.Civ.P. 2256 or subdivision (a) of Pa.R.Civ.P. 2252 are satisfied, to-wit, that the matter arise from the same transaction or occurrence, or series of transactions or occurrences from which the plaintiff's cause of action arose. *See Township of Upper Makefield v. Benjamin Franklin Federal Savings & Loan Association, supra; Fischer v. Solomon, supra.* It may well be argued that the additional defendant's counterclaim meets the "same transaction or occurrence, or series of transactions or occurrences" test.

In determining whether the respective claims asserted by the parties arise out of the same contract or transaction, within the limitation on counterclaims imposed by statutes ..., the court is not confined to the facts stated by plaintiff, but may take into account the facts set up by defendant, and will from them all determine whether the claims arise out of the same transaction. The question must be determined as each case is presented with a view to promoting justice and dispatching litigated business. A rule which arbitrarily uses the element of time to determine whether various causes of action arise out of the same contract or transaction is improper. There must be some legal or equitable relationship between the ground of recovery alleged in the counterclaim and the matters alleged as the cause of action by plaintiff. It is not enough that the parties are the same or that the transactions were made on the same day. The counterclaim must be such that it could reasonably have been anticipated when the transaction set up as the foundation of plaintiff's claim culminated. A counterclaim is allowable where the whole matter arises out of one connected series of transactions.

*"Transaction" defined.* A "transaction" within the statutes as to counterclaims is defined as the act of transacting or conducting any business, negotiation, management, or proceeding. The word, as used in counterclaim statutes, is broad and comprehensive, and is construed liberally and according to its natural and ordinary signification. In other words, the term is not a technical one and must be construed according to the context and to approved usage. It is broader in meaning than "contract" or "tort," and it may include either or both. It means any act as affecting legal rights or obligations, and properly embraces an entire occurrence out of which a legal right springs or on which a legal obligation is predicated, although it has been held that the term is not synonymous with "accident" or "occurrence."

The term "transaction" as used in the counterclaim statutes has been said to mean that combination of acts and events, circumstances and defaults, which viewed in one aspect results in plaintiff's right of action, and viewed in another aspect results in defendant's right of action; and it applies to any dealings of the parties resulting in wrong, without regard to whether the wrong was done by violence, neglect, or breach of contract. It cannot be restricted to the simple statement of the wrong complained of by plaintiff, but it must be held to include all the facts and circumstances out of which arose the injury complained of. Where the facts alleged in a counterclaim arise out of the same transaction as alleged in the complaint, such facts may cover a wider scope than where plaintiff's action is based on a specific contract.

80 C.J.S., Set-Off and Counterclaim, § 36b at 48–50 (Footnotes omitted). *Accord Lenker v. Boyer, supra; Fischer v. Solomon, supra.*

In the case at bar, the plaintiffs' complaint alleged, in relevant part, that on November 24, 1974, a "fire caused damage and destruction to the property and interest of the defendants, which property and interest were insured by the plaintiffs ...." (Paragraph 8) During January through May of 1975, the plaintiffs made payments to the defend-

ants amounting to $55,034.62, in consideration of which the defendants, for example in the case of Union National Insurance Co., "agree[d] to cooperate fully with the said Company to commence, enter into and prosecute suit against ... [those] through whose negligence or other fault the aforesaid loss was caused ...." Further, the defendants "appoint[ed] ... said 'Company'[,] ... with irrevocable power, ... to begin, prosecute, compromise or withdraw in [defendants'] name ... any and all legal proceedings that the said 'Company' m[ight] deem necessary to enforce such claim or claims .... [And, a]ny legal proceedings [we]re to be under the exclusive direction and control of said 'Company.'" (See Exhibit A–2, page 2) Similar language appeared in the releases signed in favor of Amherst Insurance Co. and Northeastern Fire Insurance Co. by the defendants. (See Exhibits A–2, pages 3 & 4)

The plaintiffs went on to aver that the defendants instituted the Fedders Action without their consent, the result of which, given the jury's verdict against the defendants, constituted "an irrevocable prejudice to the rights and interest of the plaintiffs, pursuant to their subrogation entitlement." (Paragraph 19)

In count 2 of the complaint, the plaintiffs alleged that the "activities of the defendants ... represent[ed] breaches of the contracts of insurance ... [and] of the Subrogation Receipts executed by the defendants subsequent to the loss." (Paragraph 22) In conclusion, the plaintiffs demanded judgment equal to the monies already paid to the defendants, plus interest and the costs of the action sued upon.

In response, the defendants filed an answer which admitted receipt of the monies, the institution of the Fedders Action and that the "plaintiffs knew and acknowledged that the defendants intended to institute suit." (Paragraph 13) The defendants also pleaded new matter and a counterclaim, the substance of which is not herein relevant. However, we would like to make reference to the plaintiffs' petition to intervene, which was denied, in that they asserted that the defendants and their (defendants') counsel were aware of the plaintiffs' position, and, thus, had "no right to

represent the interest of [the plaintiffs]." The plaintiffs also claimed "an absolute right to have their subrogation interests in connection with th[e] case represented ... by counsel of their choice", since, as they put it, "petitioners' interests ... [were] not being adequately nor properly represented by [defendants] nor their counsel." (Plaintiffs' Memorandum of Law in Support of Petition to Intervene at 4)

The plaintiffs' reply to the defendants' answer repeated its belief that the defendants had breached the conditions of the policies of insurance.

Thereafter, the defendants joined their trial counsel as an additional defendant, claiming that he failed to represent them in a competent manner by never advising them of plaintiffs' attempt to intervene in the Fedders Action until its completion. Also, that trial counsel's contesting of said intervention, without their knowledge, was "grossly negligent and in total disregard of [their] instructions ...." (Paragraph 24) Furthermore, the defendants complained that trial counsel breached his agreement with them by "fail[ing] to provide legal competent representation for those reasons set forth in" the preceding portion of the complaint.

After the filing of preliminary objections by trial counsel-additional defendant, which were granted, the defendants were afforded the opportunity to file an amended complaint. Therein, the defendants cited with specificity the circumstances constituting trial counsel's incompetence. In particular, trial counsel's impairing the plaintiffs' opportunity to intervene in the prosecution of the Fedders Action, all of which contravened defendants' contracts of insurance with the plaintiffs. Also, that a contingent fee agreement executed between the defendants and trial counsel required that trial counsel look to a recovery in the Fedders Action for reimbursement for costs incurred and services rendered by him.

Lastly, as is apposite here, the defendants demanded judgment against trial counsel for his alleged incompetence and indemnification from suit by the plaintiffs.

Trial counsel retorted in the form of a counterclaim contending that, as to the plaintiffs' "right of subrogation",

> On March 1, 1978, additional defendant and counsel for the plaintiffs ... entered into an agreement with regard to the handling of the ... lawsuit against Fedders Corporation ... which agreement is memoralized in letters dated March 1, 1978 and March 2, 1978 true and correct copies of which are attached ... as Exhibits A and B .... Said agreement provided, inter alia, that the plaintiffs ... would no longer pursue their attempt to intervene in the lawsuit ... and that all out-of-pocket expenses and costs of said law suit [sic] would be shared equally between the plaintiffs and defendants .... (Paragraph 5)

The plaintiffs breached the March 1–2, 1978 agreement, and this, the additional defendant averred, "resulted in the expenditure of great amounts of time and money". The additional defendant itemized these expenditures and sought reimbursement of same from the plaintiffs and defendants. This position was adhered to consistently by the additional defendant throughout the remaining pleadings filed.

▮ We conclude, therefore, that the additional defendant's counterclaim is well within the category as provided in Rules 1031 and 2256 (*see also* 80 C.J.S., Set-Off and Counterclaim, § 36a at 48), and the procedural basis for the court's ruling below, although valid as to the joinder issue, has no validity as to the *additional defendant's cause of action,* for:

> In *Townsend v. Universal Ins. Co.*, 129 Pa.Super. 188, at page 191, 195 A. 167, at page 168, we stated: "It is the consistent policy of the courts to give full opportunity to parties to plead their cause of action, if they have one, and not turn them out of court for technical errors. That is especially true if the objections refer more to the manner of the pleading than to a complete lack of a cause of action. If the pleading is vague or insufficient and it appears that a clear and adequate statement of facts can be averred, permission should be given to amend. It is

always desirable to dispose of litigation on the merits, if possible." Where a defect in a pleading may be cured by amendment, a final judgment should not be entered without affording an opportunity to amend. *Holladay v. Fidler*, 158 Pa.Super. 100, 43 A.2d 919.

*Roth v. Golden Slipper Restaurant & Catering, Inc.*, 167 Pa.Super. 558, 562, 76 A.2d 475, 477 (1950).

■ It is our conclusion that it would further this "consistent policy of the courts" to grant leave to the additional defendant to amend his counterclaim to reflect the proper parties to the suit (since the court's dismissal was more of a procedural ruling than a substantive decision on the merits of the claims raised) so that his claims for relief can be heard at the same time as those of the plaintiffs' and defendants'. *See generally Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971); *Riker v. DiGiacomo*, 315 Pa.Super. 424, 462 A.2d 267 (1983); *Harker v. Farmers Trust Co., supra*, and compare with *Stokes v. Loyal Order of Moose Lodge # 696*, 502 Pa. 460, 466 A.2d 1341 (1983); *Schladensky v. Ellis*, 442 Pa. 471, 275 A.2d 663 (1971). However, the same result does not obtain with regard to the additional defendant's trespass claim (count IV) for malicious use of process directed at the plaintiffs, defendants and defendant on the counterclaim. Given the contractual nature of the plaintiffs' complaint alleging breach by the defendants, and, in turn, the defendants' position in their complaint joining the additional defendant on competency (malpractice) grounds, "[t]he requisite proofs to establish the claim of each party are markedly distinct. As such, judicial economy would not be served by trying [all] claims together." (Citations omitted) *Zivitz v. Centennial Road Properties, Inc.*, 328 Pa.Super. 79, 82, 476 A.2d 462, 464 (1984); *see also Fyreside Shoppe, Inc. v. Ruikin*, 79 Lack.Jur. 23 (1977); *O'Connor v. Brown & Park, t/a Cook Beverage Co.*, 60 Pa.D. & C.2d 372 (1971), citing *Norristown Ford Co. v. Metropolitan Auto Dealer, Inc.*, 88 Pa.D. & C. 546, 549–550 (1954). Thus, as to the malicious use of process claim, the ruling on its merits should be determined in a separate proceeding.

Accordingly, we enter the following: Orders affirmed as to the court's dismissal of additional defendant's joinder of Cozen, Begier and O'Connor and Fred Lowenschuss as parties to the suit. However, final adjudication of the cause of action asserted by the additional defendant against the plaintiffs and defendants, except as otherwise limited herein, should proceed through the judicial process, rendering that portion of the lower court's orders dismissing same stricken.[2]

Orders affirmed in part and case remanded for proceedings not inconsistent with the opinion herein. Jurisdiction is relinquished.

---

2. In response to the reference in Cozen, Begier and O'Connor's brief to the additional defendant's and Fred Lowenschuss Associates' institution of a separate cause of action against the present litigants as a ground to dismiss the present appeal, we merely note that additional defendant's participation in the instant suit, by the filing of a counterclaim, requires that he carry through on his claim, *see Dissinger v. Rosen,* 14 Pa.D. & C. 339 (1930), until its completion, and not curtail his involvement by the commencement of a second suit. If such be the case, it is probable that the actions would be joined for trial under Pa.R.Civ.P. 213.

The same does not hold true for Fred Lowenschuss Associates since it was not a party to the initial action it would not be precluded from instituting a separate cause of action against any of the party-plaintiffs and defendants. *See Myers v. Yost,* 84 Pa.D. & C. 30 (1952).