J-A24008-23

2024 PA Super 84

| EUGENE SCHRIVER, IV | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LAURA SCHRIVER AND LANGUAGE | : | No. 1896 EDA 2022 |
| SERVICES ASSOCIATES | : | |

Appeal from the Order Entered July 1, 2022
In the Court of Common Pleas of Montgomery County
Civil Division at No: 2021-14959

BEFORE: STABILE, J., KING, J., and SULLIVAN, J.

OPINION BY STABILE, J.: **FILED APRIL 25, 2024**

Appellant, Eugene Schriver, IV, appeals from the July 1, 2022 order sustaining the preliminary objections of Appellees, Laura Schriver ("Laura") and Language Services Associates ("LSA"). We affirm in part, vacate in part, and remand.

LSA is a language translation company. Laura is LSA's president and CEO, and Appellant, Laura's son, was LSA's executive vice-president prior to his resignation in August of 2009. This appeal arises from the second of two actions filed by Appellant against Appellees. The first was filed in 2018 (the "2018 Complaint"). In it, Appellant claimed that he owned 12 shares of LSA stock, and that LSA had the right, under the parties' Stock Restriction Agreement ("SRA") to purchase those shares upon his "termination" (as opposed to resignation) from LSA's employment. In any event, Appellees did

not move to repurchase the stock until 2011, at which time they claimed the right under the SRA to repurchase Appellant's shares for $600,000.00. Appellant disputed that claim, countering that the SRA permitted Appellees to repurchase Appellant's shares upon his termination or not at all. Appellant also claimed that $600,000.00 was a below-market price for his stock.

The 2018 Complaint alleges that the parties eventually reached a settlement of their dispute (the "Settlement Agreement").[1] Exhibit B to the 2018 Complaint is a draft written settlement agreement never signed by Appellees. Appellant claims Appellees represented to him that the written draft substantially sets forth the terms of the parties' Settlement Agreement. The written draft contemplated that Appellees would pay Appellant $600,000.00 for six shares of his stock and the greater of $600,000.00 or six percent of the fair market value of LSA in 2017. 2018 Complaint, at ¶ 22. Appellant alleged that Appellees partially performed their obligations under the Settlement Agreement and then breached. Appellant then filed the 2018 Complaint alleging causes of action for breach of the Settlement Agreement, detrimental reliance, unjust enrichment, and conversion. The civil action on the 2018 Complaint remained pending as of the filing of this appeal.[2]

_____

[1] We are cognizant that Appellees contest the existence and validity of a Settlement Agreement in their defense of the 2018 Complaint. Nothing in this opinion is intended to express an opinion on that issue.

[2] Appellees represent in their brief that discovery is ongoing in that case. Appellees' Brief at 4, 8.

On July 9, 2021, Appellant filed the instant action (the "2021 Complaint"), alleging counts of fraud, minority shareholder oppression, and declaratory judgment. These claims, per Appellant's brief, "involve many of the same background allegations that are referenced in the 2018 Complaint[.]" Appellant's Brief at 7. But Appellant claims he could not have known in 2018 of Appellee's alleged fraudulent scheme, in Appellant's words, "fraudulently inducing Appellant into believing that there was an enforceable Settlement Agreement […] when, in fact, as was discovered during [Laura's] deposition, taken in discovery in the litigation of the 2018 Complaint, that Appellees never had any intention of fully performing their obligations under the Settlement Agreement[.]" Appellant's Brief at 7-8. For that reason, Appellant posits that the causes of action in the 2021 Complaint are distinct from those of the 2018 Complaint and could not have been joined in the 2018 Complaint.

On August 9, 2021, Appellees filed preliminary objections to the 2021 Complaint, in which they alleged that Appellant waived all the claims in his 2021 Complaint pursuant to Pa.R.C.P. 1020(d),[3] and pursuant to the gist of

---

[3] Rule 1020(d) provides:

> (d) Failure to Join--Waiver. If a transaction or occurrence gives rise to more than one cause of action heretofore asserted in assumpsit and trespass, against the same person, including causes of action in the alternative, they shall be joined in separate counts in the action against any such person. Failure to join a

*(Footnote Continued Next Page)*

the action doctrine. Appellant answered the preliminary objections on September 3, 2021. The parties filed competing briefs, and on June 27, 2022, the trial court entered an order sustaining Appellees' preliminary objections and dismissing Appellant's 2021 Complaint. The trial court amended that order on July 2, 2022. This timely appeal followed.

In its Pa.R.A.P. 1925(a) opinion, the trial court reasoned that Appellant's minority shareholder oppression and declaratory judgment causes of action were waived because they sought monetary, rather than equitable, relief. Trial Court Opinion, 11/21/22, at 2-3. The court agreed with Appellees that 1020(d) required Appellant in this case to allege all his causes of action in his 2018 Complaint, and that he therefore waived the causes of action in his 2021 Complaint. The trial court noted that Appellant's minority shareholder oppression and declaratory judgment causes of action expressly requested an award of damages in excess of $50,000.00.[4] Trial Court Opinion, 11/21/22, at 3; 2021 Complaint, *Ad Damnum* clauses following ¶¶ 95 and 101.[5] The trial therefore reasoned that these two causes of action are not equitable in

_____

cause of action as required by this subdivision shall be deemed a waiver of that cause of action as against all parties to the action.

Pa.R.C.P. 1020(d).

[4] Likewise, the cover page of the 2021 Complaint describes the action as an intentional tort.

[5] The parties refer to these clauses as the *ad damnum* clauses.

nature because an adequate remedy exists at law. Trial Court Opinion, 11/21/22, at 3.

As to Appellant's fraud claim, the trial court found it barred by Rule 1020(d) and by the gist of the action doctrine. The trial court reasoned that Appellant's fraud claim arises out of Laura's alleged breach of the Settlement Agreement. "[I]f the [Settlement Agreement] is a valid and enforceable contract […] Appellees' non-performance, even if based upon an intent never to perform, constitutes a breach of contract, not fraud." Trial Court Opinion, 11/21/22, at 5. The trial court further noted that Appellant used nearly identical language to assert his 2018 breach of contract claim and his 2021 fraud claim. *Id.* at 6-7.

Appellant took this timely appeal from the trial court's order, presenting the following questions:

I. Whether Appellant's claims asserted […] for minority shareholder oppression and […] declaratory judgment constituted equitable claims which were not required to have been brought by Appellant pursuant to Pa.R.C.P. 1020(d) in his earlier 2018 Complaint.

II. Whether Appellant should have been afforded the opportunity to amend Counts II [Minority Shareholder Oppression] and III [Declaratory Judgment] of his 2021 Complaint to clarify any ambiguity that may have existed as to the equitable nature of such claims, given that such amendments are supposed to be liberally permitted.

III. Whether Appellant's claim for fraud (intentional misrepresentation) is not barred by the gist of the action doctrine where it does not assert an alternative claim for Appellees' failure to perform under the Settlement Agreement, but instead asserts that Appellees intentionally

"tricked" Appellant into believing that Appellees intended to perform on the purported Settlement Agreement when, in fact, Appellees never had such an intention.

IV. Whether Appellant's claim for fraud (intentional misrepresentation) in Count I of Appellant's 2021 Complaint is waived pursuant to either [Pa.R.C.P.] 1020(d) or […] 1033(a) where Appellant filed his 2021 Complaint asserting his new fraud claim that was predicated upon a set of facts and circumstances that were not previously known and were distinct from those asserted in his 2018 Complaint.

Appellant's Brief at 3-4.

On review of an order sustaining preliminary objections, we must determine whether the averments in the complaint, along with any attached exhibits and documents, would support recovery if proven. ***McNaughton Prop., LP v. Barr***, 981 A.2d 222, 224 (Pa. Super. 2009). We must consider all the material facts alleged in the complaint, as well as all inferences reasonably deducible therefrom, as true. ***Feingold v. Hendrzak***, 15 A.3d 937, 941 (Pa. Super. 2011). Where, as here, an order sustaining preliminary objections will result in the dismissal of a suit, the trial court may sustain preliminary objections only if the case is free and clear from doubt. ***Godlove v. Humes***, 303 A.3d 477, 481 (Pa. super. 2023). We reverse the trial court only in the event of an error of law or abuse of discretion. ***McNaughton Prop., LP***, 981 A.2d at 224. An abuse of discretion may occur, for example, where the trial court dismisses a case without leave to amend in a case where an amended complaint would not be futile. ***Hill v. Ofalt***, 85 A.3d 540, 557 (Pa. Super. 2014).

We consider Appellant's first two questions together. Appellant claims his declaratory judgment and minority shareholder oppression claims were equitable in nature, and that the trial court erred in finding otherwise. Both claims, according to Appellant, request from the trial court a legal declaration that Appellant remains the owner of 12 shares of LSA stock that were his at the time of his resignation from LSA. Appellant claims the SRA gave Laura the right to repurchase his LSA stock upon his "termination" but not upon his "resignation." Appellant's Brief at 14. And, in that circumstance, Appellant was obligated to sell the stock upon Laura's election to redeem. Appellant also challenges the timing of Laura's election to repurchase and cancel Appellant's shares of LSA stock, approximately a year and a half after Appellant's departure from LSA. Appellant's Brief at 15. Given Appellees' partial performance and payment under the Settlement Agreement, Appellant believes a declaration of his continued status as a minority owner of LSA, and protection of his rights as such, is necessary.

"[E]quity has jurisdiction only in the absence of full, complete, and adequate remedy at law." *City of Philadelphia v. Armstrong*, 271 A.3d 555 (Pa. Cmwlth. 2022). Thus, if the trial court is correct that Appellant's shareholder oppression and declaratory judgment actions have a full remedy at law, we must affirm its order as to these counts. Appellant's minority shareholder oppression claim rests on the principle that majority shareholders have a duty to protect the interests of minority shareholder. *See Hill*, 85

A.3d at 550 (noting the "long-recognized principle of Pennsylvania law that '**majority shareholders** have a duty to protect the interests of the minority.'") (**quoting *Ferber v. Am. Lamp Corp.***, 469 A.2d 1046, 1050 (Pa. 1983) (emphasis added in ***Hill***). Moreover, "[a] claim of oppressive conduct, like a claim of breach of fiduciary duty, 'sounds in equity[.]" ***Ford v. Ford***, 878 A.2d 894, 899 (Pa. Super. 2005).[6]

Our review of the 2021 Complaint reveals that Count II of the 2021 Complaint (minority shareholder oppression), alleges, among other things, that Appellees have excluded Appellant from "receiving the true value of [Appellant's] LSA stock, including without limitation, [Appellant's] rights as a minority shareholder, including actual and *de facto* shareholder distributions to which [Appellant] has been entitled but denied." 2021 Complaint, at ¶ 87. Appellant further alleges that Appellants "have systematically and intentionally frustrated [Appellant's] reasonable expectations and legal entitlements as a current minority shareholder of [LSA]." ***Id.*** at ¶ 89. At the conclusion of Count II, Appellant requests financial damages and a court order for Appellees to acquire his shares of LSA stock at market value. ***Id.*** at the *Ad Damnum* clause following ¶ 95. In Count III of the 2021 Complaint (Declaratory Judgment), Appellant requests a declaration that he remains the

---

[6] ***Ford*** involved the appointment of a custodian, pursuant to 15 Pa.C.S.A. § 1767(a) in response to the minority shareholders' claim of oppressive conduct by the majority shareholder.

owner of his 12 shares of LSA stock. 2021 Complaint at ¶ 101 and the *Ad Damnum* clause following ¶ 101.

We are cognizant that both *ad damnum* clauses include a boilerplate request for damages in an amount greater than $50,000.00. Count II, as noted just above, seeks an order directing Appellees' to complete their acquisition of Appellant's LSA stock at market value. In essence, Appellant wants money, and money can be recovered in an action at law. Hence, the trial court's finding that these counts do not sound in equity.

But despite Appellant's inartful pleading, we conclude that the trial court erred in dismissing Appellant's declaratory judgment and minority shareholder oppression causes of action. Both causes of action sound in equity.[7] Both counts, separately and in tandem, allege harms for which there is no adequate remedy at law. Reading the facts alleged in the complaint along with all reasonable inferences therefrom, as we must under the applicable standard of review, Appellant claims Appellees acted in disregard of his rights as a minority shareholder in LSA and seeks a declaration that he remains a minority shareholder. While Appellant may have sustained financial damages due to Appellees' alleged disregard of his minority shareholder status, the 2021 Complaint seeks to establish his continued status as a minority shareholder of

---

[7] We are aware that the fiduciary duty of majority shareholders has been construed variously as an action sounding in equity or tort. *Linde v. Linde*, 220 A.3d 1119, 1147-48 (Pa. Super. 2019), *appeal denied*, 236 A.3d 1048 (Pa. 2020). In either case, equitable relief is available. *Id.* at 1148.

LSA, to whom the majority shareholders owe a duty. These requests are not remediable by money damages. Indeed, the nub of Appellant's argument appears to be that he did not contest the Appellees' repurchase of his 12 shares of LSA stock, in accordance with his obligations under the Settlement Agreement, so long as Appellees were performing their obligations by making payments thereunder. Because Appellees' payments ceased earlier than Appellant believes they should have, and because there is an ongoing dispute as to the validity and terms of the Settlement Agreement, Appellant has sought a declaration of his continued ownership of 12 shares of LSA.

Based on the foregoing, we conclude that Counts II and III seek forms of relief not remediable at law, and further that an amended complaint could address any confusion in this regard.[8] Perhaps, as Appellees argue, Appellant's ultimate aim is not equitable relief but the monetary damages he sought in the 2018 Complaint. And perhaps a final resolution of the litigation of the 2018 Complaint will obviate the need for further litigation of the case before us. In the future, the parties may address these issues with any appropriate motions. At the pleadings stage however, we do not believe dismissal of Appellant's shareholder oppression and declaratory judgment causes of action was appropriate, as both claims request some relief for which

_____

[8] An *ad damnum* clause is permitted at any point in the litigation. ***R.P. Clarke Personnel, Inc. v. Commonwealth Nat'l Bank***, 559 A.2d 560, 566 (Pa. Super. 1989).

no adequate remedy is available at law. Appellant's request for some remedies more appropriate to an action at law can be addressed in an amended complaint.

It follows from the foregoing that Appellant has not waived his equitable claims under Rule 1020(d), because that rule applies only to tort and contract actions: "If a transaction or occurrence gives rise to more than one cause of action heretofore asserted in **assumpsit and trespass**, against the same person, including causes of action in the alternative, they shall be joined in separate counts[.]" Pa.R.C.P. 1020(d)(emphasis added). Our Supreme Court has recognized that "Rule 1020(d) concerns causes of action sounding in assumpsit and trespass, **not equity**." ***D'Allesandro v. Wassel***, 587 A.2d 724, 726 n.2 (Pa. 1991) (emphasis added). Rule 1020(d) therefore does not bar the causes of action at Counts II and III of Appellant's 2021 Complaint insofar as they seek equitable relief.

Having disposed of the first two questions presented, we now turn our attention to the third and fourth, in which Appellant challenges the trial court's conclusions that his fraud claim was waived under Rule 1020(d) and/or barred by the gist of the action doctrine. We begin with Rule 1020(d). As noted above, Rule 1020(d) requires joinder of trespass and assumpsit actions arising out of the same occurrence. The 2018 Complaint includes a cause of action for breach of the Settlement Agreement, and the fraud claim in the 2021 Complaint alleges fraud based on allegedly newfound evidence that Appellees

- 11 -

never intended to perform their obligations under the Settlement Agreement. Because the former claim sounds in assumpsit and the latter in trespass, Rule 1020(d) mandated joinder if the two causes of action arose from the same occurrence.

This Court considered this issue in *Hineline v. Stroudsburg Elec. Supply Co., Inc.*, 586 A.2d 455 (Pa. Super. 1991), *appeal denied*, 598 A.2d 284 (Pa. 1991). This Court first noted that

> Rule 1020(d) is to "be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding" to which it is applicable. Pa.R.C.P. 126. The purpose of Rule 1020(d) is to avoid multiplicity of suits, thereby ensuring the prompt disposition of all rights and liabilities of the parties in a single suit.

*Id.* at 456.[9] Cases arise out of the same transaction or occurrence "where they involve 'a common factual background or common factual or legal questions.'" *Id.* (**quoting** *Stokes v. Local Order of Moose Lodge No. 696*, 466 A.2d 1341, 1345 (Pa. 1983)). Likewise, the *Hineline* Court quoted with approval the following definition of transaction:

> A 'transaction' within the statutes as to counterclaims is defined as the act of transacting or conducting any business, negotiation, management, or proceeding. The word, as used in counterclaim statutes, is broad and comprehensive, and is construed liberally and according to its natural and ordinary signification. In other words, the term is not a technical one and must be construed according to the context and approved usage. It is broader in meaning than 'contract' or 'tort,' and it may include either or both. It means any act as affecting legal rights or

---

[9] We are cognizant that Rule 1020(d) has been amended since *Hineline*. The amendment does not affect *Hineline's* applicability to the present case.

obligations, and properly embraces an entire occurrence out of which a legal right springs or on which a legal obligation is predicated, although it has been held that the term is not synonymous with 'accident' or 'occurrence.'

*Id.* at 457 (**quoting *U.S. Nat'l Ins. Co. v. M. London, Inc.***, 487 A.2d 385, 393 (Pa. Super. 1985)).

The plaintiff in ***Hineline*** filed suit for wrongful termination after he was fired for disabling the audio/video surveillance system his company used on employees. He filed a separate lawsuit alleging, among other things, a violation of the Wiretap Act[10] and invasion of privacy. The ***Hineline*** Court noted that both complaints involved "identical or substantially the same factual allegations[.]" ***Id.*** at 458. Thus, both cases would involve proof of the employer's aural monitoring of its employees and customers and the plaintiff's disconnection of the equipment. Pretrial discovery would have been duplicative and two separate juries would have considered the same evidence and many of the same legal questions. The ***Hineline*** Court concluded, for these reasons, that both cases arose out of the same occurrence and that Rule 1020(d) barred the latter. ***Id.*** at 459. This Court rejected the plaintiff's argument that the employer's use of surveillance equipment and the plaintiff's subsequent termination for disconnecting it arose from different occurrences. "But for [the employer's] use of the illegal equipment, [plaintiff] would not have a cause of action for wrongful discharge." ***Id.*** "We disagree that the

_____

[10] 18 Pa.C.S.A. § 5701, *et. seq.*

phrase 'same transaction or occurrence' within the meaning of Rule 1020(d) should be so stringently interpreted as to mean a single fact or instantaneous event, rather than a combination of acts and events giving rise to a right to judicial relief." ***Id.***

A careful review of both of Appellant's complaints reveals that they describe the same facts—Appellant's resignation from LSA, followed by a dispute as to the terms of Appellees' repurchase of Appellant's LSA stock, followed by the alleged negotiation, partial execution, and breach of the Settlement Agreement. 2018 Complaint at ¶¶ 7-36, 2021 Complaint at ¶¶ 6-72. The 2021 Complaint is longer and more detailed because it expounds on some of the underlying facts, such as by clarifying that Appellant's 2009 departure from LSA was a resignation, not an involuntary termination. 2021 Complaint at ¶¶ 6-7. Likewise, the 2021 Complaint includes a detailed account of the terms of the SRA and Appellees' alleged failure to comply therewith in their attempts to repurchase Appellant's stock. ***Id.*** at ¶¶ 9-36, 65-69. The detailed account of the SRA terms was absent from the 2018 Complaint. Likewise, the 2021 Complaint provides a more detailed factual account of the alleged Settlement Agreement, Appellees' alleged partial performance, and the alleged subsequent breach, than did the 2018 Complaint. ***Compare*** 2021 Complaint, at ¶¶ 37-64, ***with*** 2018 Complaint, ¶¶ 20-36. Nonetheless, the operative facts are the same, and they were known to Appellant prior to the filing of the 2018 Complaint.

Most significant, for present purposes, is that the 2018 Complaint alleges that, in 2017, Appellees, after they ceased making payments under the Settlement Agreement, "claimed to be 'unaware' of [the Settlement Agreement] or any additional payments to be made to [Appellant]." 2018 Complaint, at ¶ 36. Similarly, the 2021 Complaint alleges that,

> "**In November of 2017**, despite the above Settlement, and notwithstanding [Appellees'] partial performance of the specific terms of that Settlement which [Appellant] has now learned was part of the Fraudulent Scheme, **[Appellees] repudiated the Settlement** and denied any obligation to make a final payment to [Appellant] as provided by the Written Settlement Agreement."

2021 Complaint, at ¶ 64 (emphasis added). Thus, it is clear from both complaints that Appellees disputed the existence (and/or terms) of the alleged Settlement Agreement prior to the filing of the 2018 Complaint. The 2021 Complaint simply recharacterizes Appellees' pre-existing intent not to comply with the Settlement Agreement as a "fraudulent scheme," as seen in ¶ 64 and elsewhere throughout that document.

Appellant now argues that he was not aware of Laura's deception until her deposition during the litigation of the 2018 Complaint. But the allegations in both the 2018 and 2021 Complaints belie that claim. Both complaints expressly allege that Appellees informed Appellant in 2017 that they did not intend to do what Appellant believed they had agreed to do under the Settlement Agreement.

In ***Hineline***, this Court explained that a "transaction," within the meaning of 1020(d), is broader in meaning than either a contract or tort and

- 15 -

can include both.  Further, the term encompasses an entire occurrence out of which a legal right arises.  *Hineline*, 586 A.2d 457.  Instantly, the entire occurrence out of which the 2018 and 2021 Complaints spring is the parties negotiation, execution, and performance of the Settlement Agreement.  And while Appellant alleges both contract and tort causes of action arising out of that transaction, *Hineline* makes clear that a transaction can encompass both.

Likewise, Appellant's 2021 fraud cause of action depends on the same operative set of facts as the causes of action in the 2018 Complaint.  Here, as in *Hineline*, discovery will likely be duplicative, and juries would decide the same or substantially similar legal and factual questions.  The instant fraud cause of action turns on Appellant's allegation that Appellees entered into the Settlement Agreement with no intention of performing their obligations.  But, as the trial court noted, Appellees have disputed their assent to the Settlement Agreement and its terms.  And even if Appellees are unsuccessful in establishing that no Settlement Agreement existed, their nonperformance of the Settlement Agreement sounds in breach of contract, not in fraud.  Here, just as in *Hineline*, the cause of action in the second complaint would never exist but for the events that led to the first complaint.  Here, just as in *Hineline*, the single instantaneous event of Laura's deposition testimony does not remove the fraud cause of action from the combination of acts and events that gave rise to the relief requested in the 2018 Complaint.  For these

reasons, we conclude that the fraud count arises from the same transaction or occurrence as the causes of action in the 2018 Complaint, and that Appellant has waived his fraud claim under Rule 1020(d).

In summary, we have concluded that the declaratory judgment and minority shareholder oppression causes of action in the 2021 Complaint sound in equity and therefore can go forward. The trial court erred in sustaining Appellees' preliminary objections to those counts. The fraud cause of action in the 2021 Complaint is barred under Rule 1020(d). We affirm the trial court's order insofar as it sustained Appellees' preliminary objection to the fraud count. We remand for further proceedings consistent with this opinion.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/25/2024