Porter, Assignee, *v.* Levering (et al., Appellant).

Argued April 22, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Edred J. Pennell,* for appellant.

*Samuel H. High,* with him *John M. Dettra, Aaron S. Swartz, Jr., Louis M. Childs, II,* and *Samuel H. High, Jr.,* for appellee.

OPINION BY MR. JUSTICE STERN, May 16, 1938:

In this action for the foreclosure of a mortgage, plaintiff, assignee of the mortgage, filed a release of defendant mortgagor from personal liability for the mortgage debt. The Maples Realty Company, defendant solely by reason of its being the real owner of the mortgaged property, offered no defense in regard to the mortgage, but presented a counterclaim which the learned trial judge held it did not succeed in establishing. Accordingly, the court directed a verdict in favor of plaintiff, and overruled motions of the Realty Company for a new trial and for judgment n. o. v.

Not only are there serious gaps in the testimony, but much of the evidence presented is obscure. As far as can be ascertained from the record, the counterclaim arose out of the following circumstances: On January

14, 1930, Jacob G. Feist gave to Lillian H. Fenton his 30-day note in the sum of $6,500 with bonds of National Rubber Realty Company of a par value of $10,000 as collateral security. On February 27, 1930, Lillian H. Fenton drew a draft on the National Iron Bank of Pottstown, directed to Feist, in the sum of $6,500. It was sent to that bank for collection with the bonds attached. Feist and his wife borrowed $6,500 from the bank, giving it their joint judgment note in that amount; with the money thus obtained they paid Feist's note. The bank did not deliver the bonds to Feist, but, according to the testimony of its vice-president, who was called as a witness by the Realty Company, retained them, on Feist's authority, as general collateral for his obligations to the bank. On December 21, 1932, pursuant to notice given, the National Iron Bank sold these bonds at public sale together with other bonds of National Rubber Realty Company of the par value of $240,000 held by the bank as collateral security for joint notes of Feist and plaintiff, Samuel H. Porter. Plaintiff became the purchaser of all the bonds for $115,000, which, when proportionately allocated, represented a price of $4,600 for the $10,000 of bonds.[1] He then deposited the bonds with the bank as collateral for new notes thereupon executed by him. Disposition of the $4,600 was delayed by the bank pending the receipt of instructions from Feist; finally, after failing to hear from him, it applied this sum toward the payment of obligations of Feist and his wife to the bank on certain joint notes. Feist died on November 15, 1934, leaving his wife surviving, and on December 1, 1934, she assigned to the Realty Com-

---

[1] In plaintiff's answer to defendant's counterclaim he "admitted" that these bonds were sold to him for $10,000, but at the trial the Realty Company produced evidence by its own witness that the bonds did not bring $10,000 but, based on the price for the entire lot, $4,600. Plaintiff was not permitted to amend his pleading to conform with this fact, but there can be no doubt concerning it.

pany[2] all her right, title and interest in and to the $10,000 of bonds and in and to her claim against the bank and against plaintiff for what she alleges to have been their unlawful conversions of these bonds. It was this claim that the Realty Company attempted to assert in the present mortgage foreclosure action.

The theory of the terre-tenant as to its rights, while ingenious, is supported neither by the facts nor by the applicable principles of law. It contends that the $10,000 of bonds were purchased by the joint funds of Feist and his wife, that they therefore became their property as tenants by the entireties, that the bonds were never deposited with the bank as collateral, that the public sale of the bonds was an unlawful conversion of them, that plaintiff's purchase and pledge of them to the bank for his own debt likewise constituted a conversion, that upon the death of Feist the title to the bonds and right of action for damages passed to his wife by survivorship, and that the Realty Company, as assignee of such rights, could utilize it as the basis of a counterclaim in the foreclosure proceeding.

To show the untenability of appellant's position it is sufficient to point out that a counterclaim of this sort cannot be injected by the real owner into a proceeding for the foreclosure of a mortgage. Such an action is personal only as against the mortgagor;[3] otherwise it is in rem; no personal judgment is asked, or can be rendered, against the terre-tenant. Prior to the Service-of-Process Act of July 9, 1901, P. L. 614, terre-tenants, while permitted to intervene pro interesse suo, were not necessary parties: *Federal Land Bank of Baltimore v. King*, 294 Pa. 86, 95, 96. That act, in making them such (section 1, clause 10), did not enlarge their rights in

[2] Mrs. Feist was the beneficial owner of all the capital stock of the Realty Company.

[3] In the present proceeding, as already stated, plaintiff filed a release of any claim for personal liability of the mortgagor.

such proceedings: *Excelsior Saving Fund v. Cochran,*
220 Pa. 634. The real owner may defend his property
against the lien of the mortgage by setting up defenses
based upon matters pertaining to the mortgage and the
mortgage debt, that is, generally speaking, such defenses
as the mortgagor himself might make: *Federal Land
Bank of Baltimore v. King, supra,* p. 96. No personal
demand being made against him, the terre-tenant can
make none against the mortgagee. Set-offs and counter-
claims are procedurally available only where there are
mutual demands. Here it is clear that if the Realty
Company had brought suit against plaintiff on the cause
of action embodied in its attempted counterclaim, plain-
tiff could not have counterclaimed for the mortgage debt
merely because the Realty Company was the owner of
the mortgaged property.

If, notwithstanding this insuperable obstacle in ap-
pellant's pathway, we proceed to an investigation of the
merits of the counterclaim, we find that appellant ut-
terly failed to substantiate it. The facts do not bear out
its contention that the bonds were the property of Feist
and his wife as tenants by the entireties. The transac-
tion by which they became attached as collateral to
Feist's note to Lillian H. Fenton on January 14, 1930,
is not disclosed in the evidence. It may have been that
Feist at that time bought the bonds from her, giving his
note in payment, or it may have been that he had pre-
viously owned the bonds, and, upon borrowing money
from her, gave his note for the debt with the bonds as
collateral security. But, whatever the transaction, the
fact that his wife joined with him in borrowing the
money to pay his individual indebtedness would not, in
the absence of other facts here unproved, vest in her any
title to the bonds, either individually or as a tenant by
the entireties with her husband.

Even if the bonds did belong to Feist and his wife as
tenants by the entireties, it was entirely within their
power to give them to the bank as collateral for Feist's

individual obligations. The only testimony in the record as to the arrangement under which the bank retained them indicates that they were thus given. The bank had the right, therefore, to sell them in liquidation of the debts which they secured, and in so doing was not guilty of improperly converting them.

Another fatal weakness in appellant's case is the total absence of evidence to show that when plaintiff bought the bonds at the sale in December, 1932, he had knowledge of any lack of authority on the part of the bank to sell them or of any infirmity in its title. They were coupon bonds payable to bearer, and as such negotiable, so that a bona fide purchaser would acquire a good title: *Cochran v. Fox Chase Bank,* 209 Pa. 34, 37, 38; *Wolfe v. Pennsylvania Company for Insurances on Lives and Granting Annuities,* 322 Pa. 344.

Finally, it appears from the record that Mrs. Feist did not prove any loss resulting from the conversion of the bonds even if such a conversion occurred. Appellant's case is founded upon the premise that Feist and his wife owned the bonds as tenants by the entireties. After the bank sold the bonds it credited the proceeds toward the payment of their joint account. Presumably the price obtained at the sale represented the market value, but, whether so or not, appellant's counterclaim is based upon a waiver of the tort and a ratification of the sale (otherwise it would be an unliquidated claim in tort which could not be used as a set-off), and therefore the measure of recovery would be, not the market value, but the sale price: *Rodgers v. Studebaker Sales Co.,* 102 Pa. Superior Ct. 402, 405. By reason of the credit given by the bank to the joint account of husband and wife, they suffered no loss by the conversion: *Wolfe v. Pennsylvania Company, etc.,* supra. Neither could there arise, under such circumstances, any independent claim against plaintiff through his acquiring and then pledging the bonds, because, the conversion of the bonds by the bank being ratified, and the proceeds of the sale

having been received through the medium of the credit given, there obviously could be no recovery for an alleged second conversion of the bonds by plaintiff.

Judgment affirmed.