Opinion by
 

 Baldbige, J.,
 

 This appeal is from a decree entered by the learned court below dismissing exceptions filed by the Secretary of Banking, receiver of the Roxborough Trust Company and directing the receiver to pay to R. Packer, also known as Rose Packer, the sum of $500.
 

 It is necessary, for an understanding of this controversy, to state some of the underlying facts, which will reveal rather an unusual situation. In 1928 Harry Slass sold certain real estate to Hugh A. Wilson, who gave a second mortgage thereon to the Michael J. Davitt Building and Loan Association. To partly secure the payment of this mortgage, $500 was left by Slass with the Roxborough Trust Company to be held in trust until released by the building and loan association. The trust company, in writing, agreed to hold the money in trust and turn it over to Harry Slass upon instructions from the association.
 

 On or about the first day of May 1929, Slass assigned to “R. Packer” all his “right, title, and interest” in
 
 *474
 
 the $500 aforesaid, subject only to the prior rights of the building and loan association. Notice of this assignment was served on the Roxborough Trust Company on May 17, 1929, (the same day Slass died) by producing the original assignment and leaving for the bank’s record a photostatic copy thereof.
 

 In October 1931 the Secretary of Banking of the Commonwealth took possession of the business and assets of the Roxborough Trust Company, which had in its possession on that date $46,353.18 in cash, and other assets. On October 19, 1932, the building and loan association, through its attorney, advised the Secretary of Banking that it had no further interest in this $500 and authorized the repayment of that sum to the original depositor or his nominee. This the Banking Department refused to do.
 

 On January 28, 1933, the receiver filed a first and partial account of his administration of the affairs of the trust company.. It listed the following, item:
 

 “Amount Net Balance”
 

 “Rox. Trust Co. in Escrow for
 

 Michael Davitt B. & L. As-
 

 sociation ................. $500.00 $500.00”
 

 Notice was given that the court on February 27, 1933, would hear all objections to the account and to the allowance of claims. We might state here that we are not convinced that it was necessary for the appellee to file an exception to that item. It simply showed that $500 was held by the receiver in escrow; that was not disputed. No disposition, however, of the fund was made.
 

 A petition to confirm the account was filed February 27, 1933, which was marked “for hearing” on February 28, 1933. The record of this hearing, at which but a small amount of testimony was taken, shows that Alexander Solo, Esq. appeared for “an exceptant.” That indicates an exception had been filed notwithstanding
 
 *475
 
 the record fails to definitely show that fact. From the testimony it is evident that Solo represented the appellee and that he was pressing the payment of her claim to the $500. Counsel for the Secretary of Banking at this hearing admitted the assignment was proved, but claimed a lien on the account and a right to set off the indebtedness of. Slass against the fund in question. On July 26, 1934, the account was confirmed without any adjudication of, or reference to, the claim of R. Packer.
 

 The court .was not requested, apparently, to. make any decision respecting the ownership of this fund after the confirmation of the account until early in 1941 when counsel for the claimant and the Banking Department conferred with the court and agreed, in view of the condition of the record, that exceptions nunc pro tunc might be filed, which was done and testimony was thereafter taken before the court respecting this claim.
 

 The appellant contends that neither proof of claim nor exception to the account was filed by Slass’ assignee; that the purported exception is not in compliance with the Act of June 15, 1923, P. L. 809, as. amended May 5, 1927, P. L. 762, 7 PS §§42, 45, which statutes were in effect when the account was filed, as it is not signed by the claimant or her attorney and is .filed as of October 10, 1931, when the account was not filed until January 28, 1933; that the unsigned exception is to the refusal of the Secretary of Banking to pay the claim and not to his account as filed.; and that, claimant’s difficulty is due principally to the failure to file exceptions within the thirty day period, as required by the Acts of 1923 and 1927, supra, 7 P'S §45:
 
 Colson Stores Company’s Appeal,
 
 134 Pa. Superior Ct. 316, 318, 3 A. 2d 930.
 

 Section 42 of the Act of 1923, supra, includes the following: “The provisions of this section shall not apply to the claims of cestui que trust or others to or
 
 *476
 
 against trust funds or property in the custody, possession, or control of a corporation or person, possession of whose business and property is taken by the secretary under the provisions of this act.” This fund was undoubtedly held in trust and this provision is, therefore, pertinent.
 

 By this time one must be impressed with the fact that this record contains a number of irregularities. The parties recognized the anomalous situation and waived procedural informalities. This view is confirmed by the agreement that an exception be filed nunc pro tunc. The record disclosed an exception by “Rose Packer, also known as R. Packer,” signed by “Rose Packer,” was filed. We think this disposes of a question raised as to the identity of “R. Packer.” Considering the shape of the record before us we are of the opinion that the appellant’s argument that the alleged failure of the appellee to prove her claim, file exceptions, etc., debars her from a recovery, cannot be upheld.
 

 It seems clear that this transaction created a trust fund to be held by the trust company for the benefit of two parties — the building and loan association and Slass. The former having released its interest therein, the fund belonged to the assignee of Slass. It was held by the trust company as trustee for a special purpose and was not to be paid out on demand by checks or drafts drawn, and therefore was not a deposit.
 

 “Whether a fund is to be treated as held in trust for a special purpose, or considered merely as a deposit, creating the relation of debtor and creditor, depends on the circumstances of each particular case......A placing of securities in escrow for the benefit of a third party will protect the latter as against creditors
 
 (Sexton v. Kessler, 225
 
 U. S. 90)
 
 ;......": Austin-Nichols & Co., Inc. v. Union Trust Co., Garnishee et al.,
 
 289 Pa. 341, 348, 137 A. 461. See, also,
 
 Metropolitan Life Insurance Company’s Appeal,
 
 310 Pa. 17, 22, 164 A. 715.
 

 
 *477
 
 Slass, who was indebted to the trust company, had assigned his interest to R. Packer before it made any demand or attempted to set off its claim against the trust fund. “Mutual demands do not necessarily extinguish each other by operation of law; Set-off is permissive, not compulsory......”
 
 Palmer for use v. Heath,
 
 114 Pa. Superior Ct. 256, 259, 174 A. 824.
 

 One who receives money in trust to dispose of in a definite way, cannot set off a debt due to himself in á manner not arising out of, or in connection with, the trust relation:
 
 Valley Butter Co. v. Minnesota Coop. C. Association,
 
 300 Pa. 102, 104, 150 A. 157;
 
 Kelter, Trustee, v. American Bankers Finance Co.,
 
 306 Pa. 483, 494, 160 A. 127.
 

 The next position taken by the appellant is that if it was a trust relationship it was between the trust company and the association only and that the trusteeship ceased the instant it was released by the association, therefore any person making a claim against the fund was not a general creditor.
 

 The record does not bear out this contention. It clearly discloses that this $500 belonged to Slass, then to his assignee, and was held by the trust company in a fiduciary capacity as security in event the purchaser of the real estate failed to fulfill his obligations. So long as the money remained in the trust company’s hands the trusteeship existed.
 

 This special fund was kept intact and was always capable of being identified. That does not mean that the same pieces of coin, bank notes, or whatever made up the $500, remained the same. That was unnecessary. The test is whether the fund could always be followed and distinguished:
 
 In re Vosburgh’s Estate,
 
 279 Pa. 329, 333, 123 A. 813;
 
 Erie County v. Lamberton et al.,
 
 297 Pa. 406, 414, 147 A. 86;
 
 Trestail, Adm. v. Johnson, Sheriff,
 
 298 Pa. 388, 397, 148 A. 493;
 
 Mehler's Appeal,
 
 
 *478
 
 310 Pa. 25, 29, 164 A. 619;
 
 Reicheldifer’s Appeal,
 
 115 Pa. Superior Court, 454, 460, 176 A. 52.
 

 In
 
 Erie Trust Co. Case (No.. 1),
 
 326 Pa. 198, 191 A. 613, Mr. Justice Stern, the writer of the opinion said, p. 201: “Where improperly converted assets of a trust estate are traced into the fund for distribution, a preference has always been allowed on the theory that such assets never have become a part of those of the trustee but at all times have remained, whether in their original or substituted form, the property of the cestui que trust, and therefore the trustee’s general creditors are not entitled to any share in their distribution. The claim of the trust beneficiary in such a case is not really a preference, nor to establish an equitable lien, but rather for the reclamation of his own property.” He commented upon the Pennsylvania decisions not always being wholly consistent in passing upon the doctrine of tracing trust funds. That case practically overrules
 
 Commonwealth ex rel. v. Tradesmen’s Trust Company, (No. 8),
 
 250 Pa. 283, 95 A. 578, upon which the appellant places considerable reliance, and as Mr. Justice Stern, in referring to the three Tradesmen’s Trust Company cases, said, p. 206: “These cases also held that there was a legal difference in the situation where the trustee was a trust company and where the trustee was an individual. This suggested distinction, although repeated in some of the later authorities, would seem logically and practically unjustified, and it has been, at least tacitly, abandoned. Subsequently, the broader viewpoint was reestablished, and the principle of
 
 Knatchbull v. Hallett
 
 accepted, that ‘where a trustee has mingled trust funds with his own, and afterward takes sums from the common mass for his own use, it will be presumed, so long as the mass is as large as the original trust funds, that the sum so taken was his own and not the trust funds’:
 
 Vosburgh’s Estate,
 
 279 Pa. 329.”
 

 
 *479
 
 A review of this case fails to convince us that the court below erred in the disposition of the issues involved.
 

 The decree of the court below is affirmed at appellant’s costs.