In re BECK–RUMBAUGH
ASSOCIATES, INC.,
Debtor.

**Bankruptcy No. 85–00917K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 12, 1987.

Edward J. DiDonato, David S. Fishbone, Paul J. Winterhalter, Philadelphia, Pa., for trustee.

Fred Lowenschuss, Philadelphia, Pa., for creditor/Robert Rumbaugh.

Anthony Barone, Philadelphia, Pa., trustee.

Edward C. Cohen, Philadelphia, Pa., for debtor.

Thomas J. Elliot, Philadelphia, Pa., for John Motley & Assoc.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

At issue are two (2) applications by attorneys for counsel fees, one an Application for interim fees of $24,149.00 in compensation and $416.29 in expenses filed by the firm of Ciardi, Fishbone, and DiDonato (hereinafter "the Ciardi firm"), counsel for the Trustee in this bankruptcy, Anthony Barone, and the second an Application for $60,427.50 in compensation and $2,802.65 in expenses filed by Fred Lowenschuss Associates (hereinafter "Lowenschuss"), counsel for Robert Rumbaugh, a creditor and minority shareholder of the Debtor. Per an Order of August 18, 1986, by the United States District Court, we shall make specific Findings of Fact to support a reduced award to the Trustee's Counsel. Lacking the requisite statutory authority for same, we are constrained to deny the Lowenschuss Application in its entirety.

This bankruptcy case was filed as a Chapter 7 proceeding on March 13, 1985. That same day, the Honorable William A. King, Jr., our predecessor, appointed Anthony Barone as Trustee and, on March 29, 1985, the Ciardi firm was appointed as counsel for the Trustee. On March 19, 1986, the Ciardi firm filed their Application for interim compensation in issue, seeking

the sums cited above for services rendered for the period between March 15, 1985, and December 31, 1985.

On or about April 17, 1986, Lowenschuss filed a lengthy set of Objections to this Application, among them the contentions that the bankruptcy should never have been filed; that the work of the Trustee was duplicative of his own efforts on behalf of the Debtor; and that specific charges by the Ciardi firm were unreasonable and unnecessary. The prayer for relief was that "the bankruptcy proceedings be stayed and the entire matter be permitted to proceed before the District Court."[1]

On May 7, 1986, Judge King conducted a hearing on this fee application. Over the objection of Lowenschuss, who attended same, the Court accepted the Ciardi fee application into evidence and requested from Lowenschuss that he indicate the specifics of same which he determined to be unreasonable and unnecessary. In addition to specifically mentioning that he objected to having the Ciardi firm utilize more than one attorney on the matter, Lowenschuss repeatedly requested a continuance to give him an opportunity to present evidence and make a complete record at a subsequent hearing. Judge King denied the continuance request and the next day, May 8, 1986, entered an Order awarding the Ciardi firm $23,997.29 in fees and all costs sought, totalling $416.29.

On May 12, 1986, Lowenschuss appealed this Order to the United States District Court. After hearing argument on this and the *John L. Motley* case[2] on August 14, 1986, the District Court, per the Honorable Norma L. Shapiro, entered an Order stating that the bankruptcy court "did not articulate its reasoning" which supported its factual findings, and that, since, consequently, "the [district] court cannot exercise its proper role of appeal" of reviewing the Court's findings to determine whether

---

1. This latter Prayer apparently was a request that this Application be consolidated with the cases of *Robert Rumbaugh v. Norman H. Beck, Jr.,* C.A. No. 79–3849 (C.D.Pa.) and *John L. Motley Associates, Inc. v. Robert Rumbaugh, et al,* Misc. No. 86–73NS, further described at page 887 *infra.*

2. See page 887 *infra* for a further description of this litigation.

these findings were "clearly erroneous," the matter was remanded to this Court "to make specified findings of fact in support of its award of interim counsel fees."

On August 20, 1986, Lowenschuss filed his own Application for fees, documenting services by himself and an associate on several cases involving the stockholders of the Debtors from March, 1983, two (2) years before the bankruptcy filing, to the present. The Debtor and the Trustee both filed Objections to any allowance of compensation to Lowenschuss on September 8, 1986, and September 10, 1986, respectively.

Due principally to Judge Shapiro's remand Order, this Court, on September 15, 1986, conducted a conference between counsel for the Trustee and Lowenschuss, which resulted in an Order of September 16, 1986, requiring the parties to submit written statements of issues that they intended to present at a subsequently scheduled hearing by September 19, 1986, and September 29, 1986, respectively, and scheduling a consolidated hearing on both fee Applications on October 14, 1986.

Upon receipt of these Statements, this Court issued an Order of October 3, 1986, limiting the issues to the following:

1. Whether the Ciardi firm's services were for "actual, necessary" services, per 11 U.S.C. § 330(a)(1).

2. Whether Lowenschuss's services were a "substantial contribution" to the case, per 11 U.S.C. § 503(b)(3)(D).

3. Whether the services of any party were "excessively duplicative, or unnecessary" to the estate.

4. Whether the Applications met the standards of *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir. 1975), the seminal Third Circuit Bankruptcy-fee case.

Counsel was allowed to submit their respective Applications into the record as stating dates, times, and places of services performed, and an earlier agreement that Messrs. Winterhalter, Fishbone, and DiDonato of the Ciardi firm and Messrs. Lowenschuss and Parry from the Lowenschuss firm would be available for cross-examina-

tion was expressly set forth. The parties were directed to pre-mark and supply copies of pleadings from the records of other cases which they wished to make part of this record. Finally, it was specifically directed, in light of a perception that Lowenschuss was inclined to the contrary, that no relitigation of the propriety or necessity of the Debtor's bankruptcy would be permitted.

Despite these efforts of this Court to restrict what promised to be an extended proceeding to a manageable length, the trial nevertheless consumed several hours of time on both October 14, 1986, and October 15, 1986. At the close of the testimony, the Court entered an Order of October 16, 1986, requiring the parties to file Findings of Fact, Conclusions of Law, and Memoranda of Law on or before October 31, 1986, and to file Reply Briefs on or before November 21, 1986.

Given the posture of a directive to make specified findings of fact on the Ciardi firm's Application by Judge Shapiro's Order of August 18, 1986, we are obliged to do so and will do so hereinafter. However, rather than beginning our Opinion with Findings of Fact, and then passing on to Conclusions of Law, as is our usual custom, particularly where, unlike here, we are rendering a verdict, per Rule of Bankruptcy Practice and Procedure 7052 and Federal Rule of Civil Procedure 52(a), we shall, here, discuss the pertinent legal issues first, because we believe that our doing so in this case shortens the process by limiting our labors to making findings on only the necessarily relevant factual issues.

The wisdom of proceeding in this fashion is exemplified by our manner of disposal of the Lowenschuss fee Application. For we must conclude, as a matter of law, that this Application, irrespective of its merit on any other basis, is not allowable under any provision of the Bankruptcy Code, and therefore must be denied.

We search in vain for any statutory authority that could justify an award of compensation to Lowenschuss, as Counsel for a creditor in a Chapter 7 case, in the Code,

and this case has, from the outset, been maintained under Chapter 7.

Section 327 of Title 11 authorizes the trustee to employ attorneys, accountants, and other necessary professional persons. Compensation to such professional persons is authorized by 11 U.S.C. § 330(a). However, none of the provisions in Chapter 3 of the Code authorize compensation to professional persons employed by a *creditor*, even when, as here, the creditor is also the holder of a significant minority ownership share of the Debtor corporation.

The Court's original conception was that Lowenschuss was requesting compensation per 11 U.S.C. § 503(b), which provides as follows, and particularly § 503(b)(3)(D) thereof:

> (b) After notice and hearing; there shall be allowed administrative expenses, other than claims allowed under Section 502(f) of this Title, including—
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case: ...
>
> (2) compensation and reimbursement awarded under section 330(a) of this title;
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> (A) a creditor that files a petition under section 303 of this title;
>
> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
>
> (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;
>
> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or
>
> (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian;
>
> ...

What is noteworthy about § 503(b)(3)(D) is that its application, unlike the other sections of § 503(b)(3), is specifically limited to "a case under chapter 9 or 11 of this title." This case, as has been noted, is a case under Chapter 7 of this title.

In apparent recognition of this impediment to his request, which was specifically brought to Lowenschuss' attention at the close of testimony on October 15, 1986, and which he was specifically invited to address in his subsequent Memoranda, Lowenschuss cites, in support of his Application, no portion of the Bankruptcy Code and only several non-bankruptcy state court decisions from Pennsylvania and New Jersey in support of the principal that an attorney is entitled to compensation from any fund which he creates. It is perhaps instructive to observe that, in each of the cases cited, *In re Estate of Thompson,* 136 N.J.Super. 412, 419, 346 A.2d 442, 446 (1975); *Shilowitz v. Shilowitz,* 115 N.J.Super. 165, 188, 278 A.2d 517, 530 (1971), *modified,* 119 N.J.Super. 311, 291 A.2d 383, *cert. denied,* 62 N.J. 72, 299 A.2d 70 (1972); and *Feist v. Luzerne County Board of Assessment Appeals,* 22 Pa.Cmwlth. 181, 194–97, 347 A.2d 772, 780–81 (1975), *cert. denied,* 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 545 (1977), fee requests were *denied* because counsel was found to have acted principally in the interests of only his own client.

As we have previously indicated in interpreting 11 U.S.C. § 503(b)(3)(D) as not authorizing compensation to officers or members of Official Creditors' Committees in *In re Jennings,* 67 B.R. 106 (E.D.Pa. 1986), we will decline any requests for compensation not specifically authorized by the Code. *Accord: In re Automotive National Brands, Inc.,* 65 B.R. 412 (Bankr.W.D. Pa.1986).

We believe that this rule of interpretation of the applicable Code provisions follows that expressed by the only Court of Appeals addressing the subject, i.e., *In re*

*UNR Industries, Inc.,* 736 F.2d 1136, 1141 (7th Cir.1984), which held, in denying a Creditors' Committee request for reimbursement for court reporters, translators, and interpreters, as follows:

> [W]e note that Congress, by enacting a comprehensive reform of this nation's bankruptcy laws, has set up a carefully articulated system of administration and distribution, to which we must faithfully adhere. . . .

> To safeguard this balance [between effective representation of creditors' interests and preservation of the debtor's estate], and thus to advance the policies of the bankruptcy laws, we must limit the charges against debtors to those items which may be specifically squared with the terms of the section.

We also agree with the following statement of the Court in *In re Capital Chip Co.,* 19 B.R. 262, 263 (Bankr.D.Hawaii 1982): "The general policy of the Act denies compensation unless expressly provided."

■ While we must confess that we would have considerable difficulty in finding that Lowenschuss acted in furtherance of the Debtor-estate as opposed to the interests of his own client, in any event, we need not reach this issue here. Following the directives of the foregoing cases, it is totally irrelevant what pertinent state law might provide or how much of a "substantial contribution" Lowenschuss made to the Debtor's estate or this case. The Code, and particularly 11 U.S.C. § 503(b)(3)(D) thereof, does not permit him to recover any fees in any event, and we are therefore compelled to deny his Application as a matter of law.

Unlike the Application of Lowenschuss, the Application of the Ciardi firm, as counsel for the Trustee appointed by the Court, stands on a firm legal foundation. The Code, at 11 U.S.C. §§ 327(a), 328(a), 330(a), and 331, specifically allows compensation to a professional person employed with court approval, on terms to be approved by the court, for such services as are "actual, necessary services," § 330(a)(1), and counsel is authorized to request such services

on an interim basis at intervals of at least one hundred and twenty (120) days.

Thus, while the extended cross-examination by Lowenschuss of members of the Ciardi firm providing services in this case did occasionally raise some issues as to the necessity of certain services and results in our re-evaluation of the hourly rates requested by the firm-members in question, Lowenschuss failed to establish that any of the services were not "actual," and failed to establish that most were not "necessary." Unfortunately, the Ciardi firm was compelled to utilize considerable resources in withstanding the contentions of Lowenschuss. While it is to the credit of Lowenschuss that he has questioned specific entries and general tasks for which compensation was requested in the Ciardi Application, as too often fee applications containing doubtful entries are presented to the court in a non-adversarial context, it is also to the credit of the Ciardi firm that they did not capitulate to the demands of Lowenschuss, in the course of various pieces of litigation relative to this case, just because Lowenschuss was vociferous in advancing his position.

In consideration of the Ciardi Application, we therefore make the following Findings of Fact:

1. The Debtor corporation, BECK–RUMBAUGH ASSOCIATES, INC., filed a bankruptcy proceeding pursuant to Chapter 7 of the U.S.Code, in the United States Bankruptcy Court for the Eastern District of Pennsylvania on March 13, 1985.

2. The stockholders of the Debtor, at all pertinent times, were Norman H. Beck, Jr., who owned fifty-one (51%) percent of the corporation's stock, and Robert Rumbaugh, who owned forty-nine (49%) percent of the stock.

3. As early as 1979, certain disputes arose between Messrs. Beck and Rumbaugh which have resulted in almost constant litigation thereafter, among which are an action in the United States District Court for the Eastern District of Pennsylvania entitled *ROBERT RUMBAUGH, Individually and on behalf of all other*

*shareholders of BECK–RUMBAUGH AS-SOCIATES, INC. v. NORMAN H. BECK, JR. and BECK–RUMBAUGH ASSOCI-ATES, INC.,* C.A. No. 79–3849; an inter-pleader action entitled *JOHN L. MOTLEY ASSOCIATES, INC. v. ROBERT RUM-BAUGH, Individually, and BECK–RUM-BAUGH ASSOCIATES, INC., a corpora-tion incorporated in the state of Pennsyl-vania,* which was originally filed in the Superior Court of Essex County, New Jer-sey, but was remanded to the Eastern Dis-trict of Pennsylvania at Misc. No. 86–73NS; and a stockholders' derivative action enti-tled *ROBERT RUMBAUGH, Individually and on behalf of other shareholders of BECK–RUMBAUGH ASSOC., INC. v. NORMAN H. BECK and JOAN W. BECK, a/k/a JOAN WILLIAMS, his wife, and RICHARD BIBOROSCH and JOSEPH W. CHANDUSCK and MICHAEL J. DEL COLLO, ESQUIRE, and PLUM REALTY, INC. and BECK–RUMBAUGH ASSOC., INC.,* filed in the Philadelphia County Court of Common Pleas at Oct. Term. 1984, No. 1943.

4. On the date of the filing of the bank-ruptcy Petition, the Honorable William A. King, Jr., to whom the case was assigned, entered an Order appointing Anthony Bar-one as the Chapter 7 Interim Trustee in this bankruptcy proceedings, which ap-pointment Mr. Barone accepted on March 18, 1985.

5. On March 27, 1985, the Trustee filed an Application with the Bankruptcy Court requesting the appointment of the Ciardi firm as Counsel to the Trustee, which Ap-plication the Court granted on March 29, 1985.

6. Edward J. DiDonato, Esquire, a part-ner in the Ciardi firm who was lead counsel in this case, had been Judge King's law clerk between 1979 and 1981. He or his firm had received approximately seventy-five (75) appointments as counsel for Bar-one during the time that Barone, a non-law-yer, was serving as a Trustee.

7. The Ciardi firm, as the Trustee's counsel, reasonably devoted its efforts to preserving two (2) principal assets of the Debtor, a Florida condominium owned by the Debtor and a fund which had been interpleaded in the action begun in the Su-perior Court of Essex County, New Jersey, i.e., the *John L. Motley* case.

8. The services rendered in connection with the Florida condominium included set-ting aside a tax sale, which was performed in a separate adversarial proceeding, hiring a real estate broker to sell the condomin-ium, and defending against certain claims for payment of administrative expenses brought by a condominium association which had attempted to sell the condomin-ium. In effecting the sale, the Ciardi firm instituted two (2) adversarial cases to sell the property free and clear, the first of which was aborted, but the second of which resulted in the sale of the condominium.

9. The Ciardi firm was also compelled to defend, and did successfully defend, a Motion to Dismiss the bankruptcy proceed-ing filed by Lowenschuss.

10. In order to bring the New Jersey interpleader fund into the jurisdiction of this Court, the Ciardi firm was compelled to file an Application for Removal to, first, the United States Bankruptcy Court for the District of New Jersey and, subsequently, to the Eastern District of Pennsylvania and to obtain the transmission of the impleaded funds to the Clerk of the Bankruptcy Court for the Eastern District of Pennsylvania. This was ultimately accomplished despite vigorous opposition thereto by Lowen-schuss at every turn.

11. An item-by-item analysis of each entry on the Ciardi Application indi-cates that 7.6 of the 78.9 hours for which Edward J. DiDonato, Esquire, sought com-pensation; .7 of the 9.4 hours for which David S. Fishbone, Esquire, sought com-pensation; and 22.4 of the 120.35 hours for which Paul J. Winterhalter, Esquire, sought compensation were for intra-office conferences and drafting intra-office mem-oranda. Since this is time which could have been conserved by having a single counsel work on the matter, the compensa-ble hours of each of the foregoing attor-neys is reduced to 72.3 hours for DiDonato,

8.7 hours for Fishbone, and 97.95 hours for Winterhalter.

13. In much of his testimony, DiDonato, while nominally lead counsel, did not evince a thorough recollection or provide a convincing analysis of the legal strategies assumed. It appears that much of his work was delegated to Winterhalter. Therefore, his hourly rate is reduced to $125.00 per hour on this case.

14. Fishbone's attendance at the New Jersey hearing, his principal undertaking in this case, was limited in significance due to his inability to practice in New Jersey. Therefore, his hourly rate is similarly reduced to $125.00 per hour on this case.

15. During the time of performance of the services in issue, Winterhalter was a recent law graduate who had been practicing only two (2) years and was paid an annual salary of $27,000.00 as an associate of the Ciardi firm. His hourly rate is therefore limited to $80.00 per hour on this case.

■ 16. Much of the time requested by Angle A. Gallo, a paralegal compensable at $45.00 hourly, was expended in filing papers in bankruptcy court, which a less highly-paid individual could have performed. Her compensable hours are accordingly reduced from 3.6 hours to 1.8 hours.

17. The total compensation for legal services due to the Ciardi firm in this matter is therefore recomputed as follows:

| | | | |
|---|---|---|---|
| DiDonato | 72.3 | × $125.00 per hour | $ 9,037.50 |
| Fishbone | 8.7 | × $125.00 per hour | 1,087.50 |
| Winterhalter | 97.95 | × $ 80.00 per hour | 7,836.00 |
| Carr | .7 | × $ 45.00 per hour | 31.50 |
| Gallo | 1.8 | × $ 45.00 per hour | 81.00 |
| | | | $18,073.50 |

18. Expenses in the amount of $416.29 were requested by the Ciardi firm. The payments to the Clerk of Court for copies of papers ($16.00), cleaning of the condominium ($75.00), and court reporters for a transcript ($177.50) are allowable costs, totalling $268.50. Other costs, for copying, postage, and travel expenses, are not compensable.

19. The Ciardi firm is allowed compensation of $18,073.50 and costs of $268.50, or a total of $18,342.00 on its Application.

■ These Findings make little further discussion necessary. We note, at the outset, our duty to establish compensation at rates which we determine to be appropriate, given our appraisal of the reasonableness of the time expended and the hourly rates sought. *See, e.g., Harman v. Levin,* 772 F.2d 1150, 1152 & n. 2 (4th Cir.1985); *In re Shaffer-Gordon Associates, Inc.,* 68 B.R. 344, 350–51, (Bankr.E.D.Pa., 1986) (per SCHOLL, J.); *In re Woerner,* 67 B.R. 685, (Bankr.E.D.Pa.1986) (per SCHOLL, J.); *In re Lock Shoppe, Inc.,* 67 B.R. 74 (Bankr. E.D.Pa.1986) (per FOX, J.); *In re Shades of Beauty, Inc.,* 56 B.R. 946, 950–52 (Bankr.E.D.N.Y.1986); and *In re Minton Group, Inc.,* 33 B.R. 38, 40–41 (Bankr.S.D. N.Y.1983). For this reason, we have reduced certain of the hours expended and the hourly rates requested by the members of the Ciardi firm.

■ We also believe that costs such as postage, copying, and travel are necessary costs of doing business or overhead, which we will not compensate. *See In re National Paragon Corp.,* and *In re Donut Shops Management Corp.,* 68 B.R. 337 (Bankr. E.D.Pa.1986).

We note that Lowenschuss devoted considerable energy towards attempting to establish the existence of a patronage system among Judge King, his constant appointments of Mr. Barone, a non-attorney trustee, and the appointment of his former law clerk's firm as counsel for Mr. Barone in a large number of cases. We observe that the fact that DiDonato was a law clerk for Judge King about four (4) years before his appointment in this case is not objectionable. *See, e.g., United States v. Hollister,* 746 F.2d 420, 425–26 (8th Cir.1984); and *Smith v. Pepsico, Inc.,* 434 F.Supp. 524, 525 (S.D.Fla.1977). However, although we do not find the existence of any patronage system as claimed by Lowenschuss here, the potential of an appearance of such a system has caused this Court to no longer appoint non-attorney trustees and to develop a random-selection system of trustees

from those individuals presently regularly utilized on our panel.

Finally, we must comment on the conduct of Lowenschuss throughout these matters. As a dispute-settling official, the Court perceives that its primary role is to resolve disputes, not exacerbate them. We believe that lawyers have a similar charge, albeit that they must, at the same time, vigorously represent clients. It appears to us that Lowenschuss, while acting in good faith, and displaying remarkable zeal and energy, has adopted an excessively adversarial approach at every juncture in this case, and this may explain the excessive litigation which has been spawned from the differences between Messrs. Beck and Rumbaugh. We attempted to curtail this activity by including, in our Order of October 3, 1986, an invitation to the parties to file a subsequent application to receive compensation for their efforts in support of any successful fee applications here. This portion of the Order did not, at least as to Lowenschuss, appear to have its desired effect of causing the parties, or at least Lowenschuss, to conserve the scarce time resources of this Court. At one point, his cross-examination became so repetitive and of such limited use that we were compelled to limit same in time.

■ In *Shaffer-Gordon, supra,* 68 B.R. at 348–50, we reaffirmed the policy of our predecessor, Judge King, not to allow counsel to obtain reimbursement for time spent on preparation of fee applications except in special circumstances such as existed in *In re Bible Deliverance Evangelistic Church,* 39 B.R. 768, 772–75 (Bankr.E.D.Pa.1984) (combination of Debtor solvency and lack of cooperation justified recovery for time on fee application). The excessive time spent in pursuit of the fee application here, largely due to the extremely vociferous positions of Lowenschuss on many issues and his long, repetitive cross-examinations of opposing counsel, should likewise be compensable to the Ciardi firm, and the Court will entertain a request for such compensation in these extraordinary circumstances.

An Order consistent with the foregoing Opinion will be entered.

## ORDER

AND NOW, this 12th day of January, 1987, it is hereby ORDERED AND DECREED as follows:

1. The Application of Ciardi, Fishbone & DiDonato, Counsel to the Trustee, for an Order of Allowance of Interim Compensation, is hereby GRANTED in part, and the sum of $18,073.50 is awarded as reasonable compensation for the services rendered in this matter during the period of March 15, 1985, through December 31, 1985, and an additional sum of $268.50 is allowed as a reimbursement for costs during the same period.

2. The Application of Fred Lowenschuss Associates for Interim Compensation is DENIED.