### In re Joseph SCHILIRO, t/d/b/a J. Schiliro General Contractor, Debtors.

**Bankruptcy No. 85–04563K.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 10, 1987.

As Amended May 4, 1987.

James R. DiFrank, Philadelphia, Pa., for debtors.

Harold B. Vikoren, Doylestown, Pa., Alan C. Gershenson, Joel C. Shapiro, Philadelphia, Pa., for AmQuip Corp.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Addressed herein is an epilogue to our very first published Opinion, *In re Schiliro*, 64 B.R. 422 (Bankr.E.D.Pa.1986). In that Opinion, we granted the Debtor's Motion to Dismiss an involuntary bankruptcy Petition filed against the Debtor by AmQUIP CORPORATION (hereinafter referred to as "Am Quip"), on September 4, 1986. In the course of the Opinion, we further stated that we did not find bad faith on the part of AmQuip, such as would justify damage per 11 U.S.C. § 303(i)(2), but strongly suggested that it should voluntarily agree to compensate the Debtor's Counsel as per § 303(i)(1).

Thereafter, we conducted a conference between Counsel for the Debtor, James R. DiFrank, Esquire, and Counsel for AmQuip, Harold B. Vikoren, Esquire, for the purpose of resolving the matter of § 303(i) liability to thus attempt to prevent that issue from escalating.

We were not, however, totally successful in doing so, not because Mr. Vikoren denied liability on the part of his client, but because Mr. DiFrank believed that his client was entitled to additional damages, per § 303(i)(2). Finally, Mr. DiFrank filed a Motion for attorneys fees on December 12, 1986. After a hearing on January 6, 1987, at which Mr. Vikoren disputed only a few charges on Mr. DiFrank's Application, procedurally in accordance with the standards set forth *In re Meade Land & Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975), at which Mr. DiFrank attempted to convince us to both grant his request for attorneys fees and allow him to proceed in District Court for additional damages, per § 303(i)(2), we granted Mr. DiFrank's request in the amount of $6,542.50.

Unfortunately, the matter did not end there. On February 18, 1987, Mr. DiFrank filed a Motion to hold AmQuip in contempt of court for failing to make payment per our Order of January 6, 1987. A hearing on this Motion was held on March 18, 1987. Mr. Vikoren attended but offered no reason or legal excuse for AmQuip's non-payment. Mr. DiFrank pressed for an additional award of fees and damages for contempt. We advised both parties that we intended to enter an Order of the substance of our Order of March 20, 1987, and only Mr. DiFrank objected. In that Order, we directed AmQuip to pay the $6,542.50 to the Debtor for attorneys fee within ten days of this Order and, if payment were not made, to allow Mr. DiFrank to file a supplemental Application requesting fees as compensation for efforts expended after January 6, 1987. We also scheduled a hearing on April 7, 1987, to consider further penalties if AmQuip failed to comply.

Given this history, it was with dismay that we received on March 25, 1987, per Blank, Rome, Comisky, and McCauley (hereinafter referred to as "Blank, Rome"), a prestigious Philadelphia law firm apparently recently retained by AmQuip, a Motion by AmQuip for "Confirmation" of the fact that it has "set off" the $6,542.50 against this portion of a confessed judgment which it had obtained prior to the filing of its involuntary petition against the Debtor in the Court of Common Pleas of Bucks County. On March 30, 1987, AmQuip filed a further Motion to Amend our Order of January 6, 1987, and to "delay" paying the sum set forth in our previous Orders until the previous Motion could be resolved.

As might be anticipated, Mr. DiFrank responded with an Answer claiming, *inter alia*, waiver of the defense of setoff by AmQuip in its representation by Mr. Vikoren, lack of mutuality of the claims in issue which he asserted was necessary to assert a setoff, and, in addition, seeking an Order requesting additional attorney's fees and sanctions against AmQuip and "its attorney" under 28 U.S.C. § 1927 and F.R.Civ.P. 11.

At the April 7, 1987, hearing, Mr. Di-Frank produced a Writ of Execution issued by Mr. Vikoren in the Bucks County Court, and recently received by his client, which indicated no credit for a setoff. The only response of AmQuip's new counsel was to state that they were told by Mr. Vikoren, who was obviously still in the case, that he had filed papers to setoff the $6,542.50 award.

We begin our discussions of the applicable law by noting that it is not our practice to award attorney's fees to litigants where the Bankruptcy Code does not expressly allow same. *See In re National Paragon Corp.*, 68 B.R. 337, 340–41 (Bankr.E.D.Pa. 1986); and *In re Jennings*, 67 B.R. 106, 109–10 (Bankr.E.D.Pa.1986). However, we have indicated that allowance of such fees may be imposed in these thankfully few instances where we found that a party has been put to an excessive effort in pursuing his just fees by an opponent. *See In re Woods*, 69 B.R. 999, 1005 (Bankr.E.D.Pa. 1987); and *In re Beck-Rumbaugh Associates, Inc.*, 68 B.R. 882, 889 (Bankr.E.D.Pa. 1987). We must confess that in no prior case, certainly not in *Woods*, where we never doubted defense counsel's good faith, and even in *Beck-Rumbaugh*, where we believed Rumbaugh's counsel to be completely misguided but nevertheless in good faith in his opposition to a fee request, have we ever found that opposition to a justified fee award was as excessive as in this case.

■ We totally reject AmQuip's notion that a fee award, per § 303(i), can be set off against the claim which an unsuccessful petitioning creditor in an involuntary case has against the Debtor. Furthermore, even assuming that AmQuip did set off the Bucks County judgment, an issue on which, although AmQuip would have had the burden of proof, it presented no evidence that it in fact did so, and only a lame response to Mr. DiFrank's evidence to the contrary. Finally, the months of virtual silence of Mr. Vikoren cause us to conclude that AmQuip has waived any such defense.

We believe that there are very strong public policy reasons why an award pursu-

ant to § 303(i) should not and cannot be permitted to be set off against the unsuccessful petitioning creditor's claims against the Debtor. It can be assumed that most, if not all, petitioning creditors in involuntary cases are owed sums by Debtors. If the petitioning creditor could suffer no other recourse except a reduction in his probably-uncollectible judgment as a penalty for requiring a debtor to defend an unjustified case, and Congress has specifically stated should result in such a penalty, the dis-incentive built into the system to discourage such actions would evaporate. The rule sought by AmQuip would surely be a boon to creditors who seek to wear down to submission small debtors such as the Debtor here.

If this concept carried over to fee awards pursuant to § 523(d), as in *Woods, supra,* or other cases where statutory fees are permissible, such as the Truth-in-Lending Act, per 15 U.S.C. § 1640(a)(3), nothing short of havoc would be infected upon the finely-tuned Congressional mandate that, in certain types of actions, where Congress has established a statutory fee award, the wrongdoing creditor must pay for his actions. *See In re Jablonski*, 70 B.R. 381 (Bankr.E.D.Pa.1987). The incentive which Congress meant to give to counsel to defend such causes against economically superior creditors would, if we following AmQuip's reasoning, be eliminated. *See Woods, supra,* 69 B.R. at 1000–01.

As strong as this policy argument itself stands as a rebuttal to AmQuip's contentions, its "legal" argument, based on the concept of setoff, serves it no better. Congress, in drafting the Code, indicated, in § 303(i), that the *Debtor*, as opposed to his counsel, was entitled to a *judgment* for, *inter alia*, a reasonable attorneys fee. This caused us to phrase our Order of January 6, 1987, tracking § 303(i), as we did. However, there can be little doubt that the actual recipient of the § 303(i) Order is to be the Debtor's counsel, Mr. DiFrank, and rightly it should be. We would have little sympathy with a debtor who, being the recipient of a judgment per § 303(i), attempted to withhold all or a part

of it from his counsel. Therefore, in actuality, the § 303(i) award must be understood as compensation to counsel for his or her efforts and as, effectively, an award of fees to the Debtor's counsel. We believe that Mr. Schiliro would have no more claim to retain the award of attorneys fees pursuant to § 303(i) than he would have a justified contention that Mr. DiFrank was liable for his debts.

We have already held, in interpreting 11 U.S.C. § 553(a), that the "right of setoff should properly be narrowly construed." *In re Lessig Construction, Inc.,* 67 B.R. 436, 441 (Bankr.E.D.Pa.1986). Moreover, one of the first "express restrictions" of the application of setoff, which is an equitable doctrine, is that "only a 'mutual debt' may be set off." *Id.*

Our research reveals that the same concepts—that set off is an equitable and hence discretionary doctrine and that the element of mutuality must be present before setoff can be applied—is recognized in Pennsylvania law. *See, e.g., Taylor v. Calmar Steamship Co.,* 35 F.Supp. 335, 337 (E.D.Pa.1938); *Hunter v. Henning,* 259 Pa. 347, 350–51, 103 A. 61, 62 (1918); *M.N.C. Corp. v. Mt. Lebanon Medical Center,* 510 Pa. 490, 509 A.2d 1256, 1259 (1986); *Porter v. Levering,* 330 Pa. 392, 396, 199 A. 482, 484 (1938); and *In re Bell,* 147 Pa.Super. 471, 477, 24 A.2d 101, 104 (1942).

One of the strongest authorities to the contrary of AmQuip's position is a case which, unwittingly, it cites in purported support of its position, *Proie Bros. Inc. v. Proie,* 323 F.Supp. 503, 509 (W.D.Pa.1971).[1] There, the court, after allowing set-offs of mutual claims of the parties *inter se,* expressly declined to permit a set off against the fees of the attorney of the other party. In a quote which is pertinent to the policy argument we addressed *supra,* the court states:

It would be an injustice to turn over the fees for the services rendered by the attorneys for the plaintiffs to the defendant, their opponent, whom they had defeated in a difficult and expensive trial and appeal. Likewise, it would be a wrong to the plaintiffs, if they were insolvent as the defendant contends, by refusing to protect their attorneys' equitable interests, and thus prevent them from obtaining the services of attorneys to enforce a rightful claim.

Also a very convincing reasoning similar to that of our below was advanced by the Fifth Circuit Court of Appeals, in *Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1365–66 (5th Cir.1979), which is the only case of which we are aware where a creditor was so bold as to suggest that the award of fees to the plaintiff in a Truth-in-Lending Act (hereinafter referred to as "TILA") action could be set off against the consumer's debt to the creditor. We note that the applicable statutory provision in the TILA, 15 U.S.C. § 1640(a)(3), literally provides, as does § 303(i), that the award of fees shall be to the consumer rather than his counsel. Nevertheless, the *Plant* court states, at 598 F.2d 1366, as follows:

Were the attorney's fee award subject to setoff, the expectation of fees from a successful action might well be limited to the resources of the debtor in any case where the outstanding debt, being in default and subject to counterclaim, exceeded the recovery. To allow a setoff, would in effect relieve the creditors in violation of the Act of the attorney's fe expense in the case of the insolvent debtor. Such a result would thwart the statute's individual enforcement scheme and its remedial objectives.

In support of the trial court's order, defendant argues that the statute mandates a personal award to the plaintiff and not to his attorney and points to analogous provisions for attorney's fees in other statutory schemes. Defendant relies upo the literal language of 15 U.S. C.A. § 1640(a) which provides for liability

---

1. AmQuip cites one other case, in support of a purported concept that there is "a doctrine of automatic setoff in Pennsylvania." *Pittsburgh National Bank v. United States,* 657 F.2d 36, 38 (3d Cir.1981). However, a careful reading of this case indicates that this reference is to such a doctrine set forth in *Aarons v. Public Service Bldg. & Loan Ass'n,* 318 Pa. 113, 117, 178 A. 141 (1935), which is expressly limited to *bank* setoffs.

for amounts including attorney's fees "to that persom" to whom disclosure was not made. It is suggested that by this language Congress has required that plaintiff be paid directly and therefore this payment is subject to setoff.

Such an approach misstates the issue before the Court, places greater emphasis upon form than substance, and attaches to this phrase an unintended significance. The issue with which the Court is concerned is not whether plaintiff is nominally to receive the money but whether ultimately it is to go to her attorney or to be credited toward defendant in repayment of plaintiff's debt.

In sum, we find the necessary element of mutuality entirely lacking here. There is thus absolutely no merit in AmQuip's contention that setoff in the instant factual context is either "automatic" or, as would be applied here, even casually acquainted with the equitable "trade-off" concept from which setoff arises.

Despite our rejection of the legal position of AmQuip at this stage in this case, we are not prepared, at least at this point, to impose further sanctions upon it in addition to those which we already indicated that we would impose, were payment not made, in our Order of March 20, 1987, which, being unappealed, must be adhered to unless, as most definitely is not the case, we were inclined to reconsider our Order. Therefore, we are according Mr. DiFrank the opportunity to file a request for all of his counsel fees incurred since January 6, 1987, to date. We shall also allow him to include time spent on his fee application, because, as we indicated below, the facts here clearly fit the exception to our rule denying fees for preparation of such applications which we set forth in *In re Shaffer-Gordon Associates, Inc.,* 68 B.R. 344, 347–50 (Bankr.E.D.Pa.1986), as in *Woods, supra,* and *Beck-Rumbaugh, supra.*

However, at least at this point, we shall not accept the Debtor's invitation to hold AmQuip in contempt of court, nor impose sanctions per F.R.Civ.P. 11 upon AmQuip's counsel. Because we are hopeful that, guided by our statements at the hearing on April 7, 1987, and this Opinion, counsel for AmQuip will perform its duty as officers of the court and make certain that the sums awarded are paid, we are not, at this point, faced with such a "most compelling circumstance" that we believe that imposition of contempt for what is, in effect, a failure to pay a money judgment, would be appropriate. *Dunlop v. Fisher,* 406 F.Supp. 760, 760 (D.Colo.1976). *See also Baumrin v. Cournoyer,* 448 F.Supp. 225, 227 (D.Mass. 1978).

Likewise, we are reluctant to impose a penalty per F.R.Civ.P. 11 at this point, as we were in *Fleet v. U.S. Consumer Council, Inc.,* (Bankr.E.D.Pa., Report and Recommendation filed Feb. 3, 1987), *adopted and revised,* C.A. No. 86–0263 (E.D., Order filed March 2, 1987, 70 BR 845, 852), where we anticipate that, with proper guidance from us, counsel will perform their duties as officers of the court.

An Order consistent with this Opinion shall be issued.

### ORDER

AND NOW, this 10th day of April, 1987, after hearing held on April 7, 1987, before the undersigned on the continued hearing on the Motion of JOSEPH SCHILIRO for Order for Contempt for Failure to Comply with Bankruptcy Code Section 303 and Order of Court dated January 6, 1987 (hereinafter referred to as "the Debtor's Motion") and the Motions of AmQUIP CORPORATION (1) for confirmation of Setoff in Satisfaction of Judgment and (2) for Amendment of Order Dated March 20, 1987, Pursuant to Bankruptcy Rule 7052(b) (hereinafter referred to as "The AmQuip Motions"), it is hereby ORDERED as follows:

1. The AmQuip Motions are DENIED.

2. The Debtor's Motion is GRANTED in part.

3. Our Orders of January 6, 1987, and March 20, 1987, directing AmQuip Corporation to pay the sum of $6,542.50 to the Movant, Joseph Schiliro, are reaffirmed, and this sum shall be paid within ten (10) days of the date of this Order.

4. Counsel for Joseph Schiliro may file, on or before April 27, 1987, an Application pursuant to *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir. 1975), for all additional counsel fees expended after January 6, 1987, including time spent in preparation of his fee application.

5. A hearing on any opposition to any such Application and to consider whether any additional penalties may be imposed upon AmQuip Corporation or its Counsel is scheduled on

TUESDAY, MAY 5, 1987, at 10:00 A.M. in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.